No. 24-1398

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

———————————

VALERIE KLOOSTERMAN,

*Plaintiff-Appellant,*

v.

METROPOLITAN HOSPITAL ET AL.,

*Defendants-Appellees.*

———————————

On Appeal from the United States District Court
for the Western District of Michigan
No. 1:22-CV-944-JMB-SJB

———————————

## BRIEF FOR *AMICUS CURIAE* THE RELIGIOUS FREEDOM INSTITUTE

———————————

BRIAN T. GOLDMAN
 *Counsel of Record*
HOLWELL SHUSTER & GOLDBERG LLP
425 Lexington Avenue
New York, New York
(646) 837-5129
bgoldman@hsgllp.com

*Counsel for Amicus Curiae*

August 7, 2024

## CORPORATE DISCLOSURE STATEMENT

*Amicus curiae* does not have a corporate parent, is not owned in whole or in part by any publicly-held corporation, and is not itself a publicly-held company.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................. iii

INTEREST OF *AMICUS CURIAE* ............................................................. 1

INTRODUCTION ......................................................................................... 3

ARGUMENT ................................................................................................. 4

I. GAMESMANSHIP, SUCH AS
THE TYPE AT ISSUE HERE, SEVERELY
HARMS RELIGIOUS DISCRIMINATION PLAINTIFFS ........................... 4

II. DEFENDANTS FORFEITED THE RIGHT TO ARBITRATE .................... 6

   A.  Arbitration Is A Creature Of Contract, And
      Therefore Subject To Ordinary Forfeiture Principles ............................. 6

      1.  *Contractual Forfeiture Is*
         *Distinct from Contractual Waiver* ..................................................... 6

      2.  *Rules Concerning Forfeiture*
         *Apply to Arbitration Clauses* ........................................................... 7

   B.  The District Court Misapplied This Law ................................................ 10

III. THESE TITLE VII AND
SECTION 1983 CLAIMS ARE NOT ARBITRABLE ................................. 12

CONCLUSION ............................................................................................ 17

CERTIFICATE OF COMPLIANCE ............................................................ 19

CERTIFICATE OF SERVICE ..................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*Alexander v. Gardner-Denver*,
    415 U.S. 36 (1974)................................................................14

*Barrentine v. Arkansas–Best Freight System, Inc.*,
    450 U.S. 728 (1981)..............................................................15

*Bromley v. Michigan Educ. Ass'n-NEA*,
    82 F.3d 686 (6th Cir. 1996) ................................................14

*Colvin v. Caruso*,
    605 F.3d 282 (6th Cir. 2010) ................................................5

*Firewalker-Fields v. Lee*,
    58 F.4th 104 (4th Cir. 2023) ................................................4

*Frank's Nursery & Crafts, Inc.*,
    177 F.3d 448 (6th Cir. 1999) ..............................................17

*Freytag v. Comm'r*,
    501 U.S. 868 (1991)..............................................................12

*Granite Rock Co. v. Teamsters*,
    561 U.S. 287 (2010)................................................................9

*Grasty v. Colorado Tech. Univ.*,
    599 F. App'x 596 (7th Cir. 2015) .........................................8

*Gunn v. NPC International, Inc.*,
    625 F. App'x 261 (6th Cir. 2015) .......................................10

*Heartland Plymouth Court MI, LLC v. NLRB*,
    838 F.3d 16 (D.C. Cir. 2016)................................................5

*Ins. Corp. of Ir.* v. *Compagnie Des Bauxites De Guinee*,
    456 U.S. 694 (1982)................................................................9

*Keener v. Jeld-Wen, Inc.*,
    206 P.3d 403 (Cal. 2009) .......................................................7

iii

*McCall v. Chesapeake & Ohio Ry. Co.*,
844 F.2d 294 (6th Cir. 1988) ...................................................................15

*McDonald v. City of W. Branch, Mich.*,
466 U.S. 284 (1984).......................................................................... 13, 14

*Mitchum v. Foster*,
407 U.S. 225 (1972)..................................................................................13

*Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*,
473 U.S. 614 (1985)............................................................................ 8, 13

*Morgan v. Sundance, Inc.*,
992 F.3d 711 (8th Cir. 2021) ....................................................................5

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022)...................................................................... 9, 10, 11

*Nexteer Automotive Corp. v. Mando America Corp.*,
886 N.W.2d 906 (Mich. Ct. App. 2016)..................................................11

*People v. Phipps*,
933 N.E.2d 1186 (Ill. 2010)........................................................................7

*Quality Prod. & Concepts Co. v. Nagel Precision*,
666 N.W.2d 251 (Mich. 2003).............................................. 6, 11, 12

*Rich v. Sec'y, Fla. Dep't of Corr.*,
716 F.3d 525 (11th Cir. 2013) ...................................................................4

*Roberts v. Neace*,
65 F.4th 280 (6th Cir. 2023) ......................................................................4

*Rush v. Oppenheimer & Co.*,
779 F.2d 885 (2d Cir. 1985) ....................................................................10

*Scherk v. Alberto-Culver Co.*,
417 U.S. 506 (1974)....................................................................................8

*Schill v. Wisconsin Rapids Sch. Dist.*,
786 N.W.2d 177 (Wisc. 2010)...................................................................7

iv

*Schwebke v. United Wholesale Mortg. LLC*,
    96 F.4th 971 (6th Cir. 2024) ...............................................................11

*United States v. Olano*,
    507 U.S. 725 (1993).............................................................................7

*Wachovia Bank v. Schmidt*,
    546 U.S. 303 (2006).............................................................................8

*Westmoreland v. Sutherland*,
    2009 WL 10722598 (N.D. Ohio Sept. 9, 2009) ...............................14

*Zuckerman Spaeder, LLP v. Auffenberg*,
    646 F.3d 919 (D.C. Cir. 2011)…………………………………………...6, 11

## Other Authorities

Jean R. Sternlight, *Compelling Arbitration of Claims Under the Civil
    Rights Act of 1866: What Congress Could Not Have Intended*,
    47 U. Kan. L. Rev. 273 (1999). .........................................................16

Joseph C. Davis & Nicholas R. Reaves, *The Point Isn't Moot:
    How Lower Courts Have Blessed Government Abuse of the
    Voluntary-Cessation Doctrine*,
    129 Yale L.J. Forum 325 (2019) ..........................................................5

Williston on Contracts (4th ed).................................................................6

## Rules

Fed. R. Civ. P. 12(h)(1).............................................................................8

Notes of Advisory Committee, Federal Rule of Civil Procedure 12 (1966)............8

## Statutes

9 U.S.C. § 2..............................................................................................9

9 U.S.C.  § 4..............................................................................................9

42 U.S.C. § 1983 ............................................................................ 3, 13, 16

42 U.S.C. § 2000 *et seq*................................................................... *passim*

## INTEREST OF *AMICUS CURIAE*

The Religious Freedom Institute (RFI) is committed to achieving broad acceptance of religious liberty as a fundamental human right, a source of individual and social flourishing, the cornerstone of a successful society, and a driver of national and international security.[1]

Among its core activities, RFI equips students, parents, policymakers, professionals, faith-based organization members, scholars, and religious leaders through programs and resources that communicate the true meaning and value of religious freedom, and apply that understanding to contemporary challenges and opportunities.

RFI believes that religious freedom necessarily encompasses the rights of individuals and institutions to exercise their sincerely-held religious beliefs in the practice of medicine.  RFI defends this free exercise by shaping policy, empowering professionals, and equipping students so that their practice of medicine is, as the Hippocratic Oath requires, according to their "greatest ability and judgment" and "do[es] no harm or injustice to them."  RFI also maintains a

---

[1] No party's counsel authored this brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief.  Appellants consented to the filing of this brief; appellees did not consent.

Medical Conscience Rights Initiative, which provides educational resources on matters pertaining to the conscientious practice of medicine.

To this end, RFI has an interest in ensuring that Ms. Kloosterman's important federal claims, which go to the heart of protecting an individual's right to live according to her deeply held religious convictions, are heard on the merits, in federal court—and not in arbitration.

## **INTRODUCTION**

Valerie Kloosterman brought statutory claims in federal court seeking to combat religious discrimination that she allegedly suffered at the hands of Defendants-Appellees. *Amicus curiae* the Religious Freedom Institute believes those claims should be vindicated in federal court, as the statutory provisions that Ms. Kloosterman sued under (42 U.S.C. § 1983 and Title VII) provide. The ploy engineered by Defendants-Appellees—effectively, strike out on a motion to dismiss, and only then seek to move the case to arbitration—simply toils religious-discrimination plaintiffs in venue fights (years after the litigation has commenced) and frustrates their ability to get to a considered judgment, on the merits, in an Article III court, as these antidiscrimination statutes allow.

**ARGUMENT**

## I.  GAMESMANSHIP, SUCH AS THE TYPE AT ISSUE HERE, SEVERELY HARMS RELIGIOUS DISCRIMINATION PLAINTIFFS

In RFI's experience, government actors habitually leverage procedural devices to frustrate plaintiffs' attempts to vindicate their civil rights and to prevent courts from passing on the merits of their claims.  Defendants-appellees apparent cynical ploy in this case—moving to compel arbitration only *after* losing a dispositive motion at the motion to dismiss stage—is a paradigmatic instance of this strategy at work.

Consider, for example, what happened after members of a Baptist church obtained a preliminary injunction in this court against the State of Kentucky for violating its First Amendment rights:  The state successfully avoided a final judgment in the case by changing its law and mooting the case.  *Roberts v. Neace*, 65 F.4th 280 (6th Cir. 2023).  Or take the State of Florida's refusal for years to provide religiously mandated diets to prisoners before strategically attempting to moot a case by changing its policy as soon as a prisoner acquired counsel.  *See Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525 (11th Cir. 2013).

Indeed, prison systems frequently seek to evade liability for violating inmates' religious liberty by transferring inmates to moot their claims.  *See, e.g.*, *Firewalker-Fields v. Lee*, 58 F.4th 104, 113–14, 118 (4th Cir. 2023) (holding moot RLUIPA claim of a Muslim prisoner denied Friday Prayer after transfer because

4

"[RLUIPA] only provides equitable relief"); *Colvin v. Caruso*, 605 F.3d 282, 287–89 (6th Cir. 2010) (deeming case moot when prisoner was transferred shortly after filing suit for denial of kosher diet).

"In short, government defendants often seek to avoid creating adverse precedent that will preclude desired policy ends, even if that means 'losing a few battles to still win the war.'" Joseph C. Davis & Nicholas R. Reaves, *The Point Isn't Moot: How Lower Courts Have Blessed Government Abuse of the Voluntary-Cessation Doctrine*, 129 Yale L.J. Forum 325, 332 (2019) (citing *Heartland Plymouth Court MI, LLC v. NLRB*, 838 F.3d 16, 28 (D.C. Cir. 2016)).

This unfortunate pattern is illustrated by the litigation strategy employed here by the defendant University of Michigan Health–West, an agency of the state of Michigan. Of course, defendants did not attempt to moot the case, but the effect is not dissimilar—Defendants-appellees took a swing at a dispositive motion, missed, and now seek to move the entire dispute to private arbitration, which, as discussed below, is an inadequate forum for the religious discrimination claims alleged here. This gambit should not be allowed. *Morgan v. Sundance, Inc.*, 992 F.3d 711, 716 (8th Cir. 2021) (Colloton, J., dissenting) (criticizing as "tactical" a motion to compel arbitration only made after the moving party was no longer "content with a judicial forum"), *vacated and remanded*, 596 U.S. 411 (2022).

5

## II.    DEFENDANTS FORFEITED THE RIGHT TO ARBITRATE

### A.    Arbitration Is A Creature Of Contract, And Therefore Subject To Ordinary Forfeiture Principles

#### 1.    *Contractual Forfeiture Is Distinct from Contractual Waiver*

It is a "general principle of contract law that either party to a contract may waive virtually any contractual provision or right in its favor[.]"  Williston on Contracts § 39:14 (4th ed.).  "Waiver is distinct from forfeiture, however, in that waiver is generally intentional while forfeiture generally involves an unintentional loss."  *Id*. at § 39:16.  This appeal concerns whether Michigan Health forfeited— not waived—the right to compel arbitration, because "to be technically correct as well as clear … forfeiture, not waiver, is the appropriate standard for evaluating a late-filed motion" to compel arbitration.  *Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 922 (D.C. Cir. 2011).

The lodestar of forfeiture is an "*unintentional*" loss, in contrast to waiver, which centers on the intentional relinquishment of a right.  Williston, *supra*, at § 39:16 (emphasis added).  Michigan law, which the district court applied,[2] (despite federal law providing the relevant rule of decision, *see* Petitioner-Appellant's Br. 20-27), is clear about this.  In *Quality Prod. & Concepts Co. v.*

---

[2] *See* Dkt. 79 at 2, *Kloosterman v. Metropolitan Hospital et al.*, No. 22-cv-00944 (Apr. 5, 2024) (hereinafter, the "District Court Op.").

*Nagel Precision, Inc.*, the Supreme Court of Michigan explained that "waiver and forfeiture are related, but distinct, concepts" and that "[w]hile waiver requires an intentional and voluntary relinquishment of a known right, a forfeiture is the failure to assert a right in a timely fashion."  666 N.W.2d 251, 261 (Mich. 2003).  This conceptual distinction between waiver and forfeiture is uniform across many states.  *See, e.g.*, *Keener v. Jeld-Wen, Inc.*, 206 P.3d 403, 414 n.19 (Cal. 2009) ("The former term (forfeiture) refers to a failure to object or to invoke a right, whereas the latter term (waiver) conveys an express relinquishment of a right[.]"); *People v. Phipps*, 933 N.E.2d 1186, 1191 (Ill. 2010) ("While forfeiture applies to issues that could have been raised but were not, waiver is the voluntary relinquishment of a known right."); *Schill v. Wisconsin Rapids Sch. Dist.*, 786 N.W.2d 177, 191 n. 21 (Wisc. 2010) (similar).  Indeed, the United States Supreme Court has observed the same distinction between these two related—but distinct—doctrines.  *United States v. Olano*, 507 U.S. 725, 733 (1993) ("Waiver is different from forfeiture.  Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (quotation marks omitted)).

> 2.    *Rules Concerning Forfeiture Apply to Arbitration Clauses*

This black-letter law on forfeiture of contractual rights applies in full force to contractual arbitration clauses.

7

**a**. "An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).  In other words, "[b]y agreeing to arbitrate . . . a party does not forgo [its] substantive rights . . . it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, Inc., 473 U.S. 614, 628 (1985).  In this sense, motions to compel arbitration, more than anything else, "concern venue," *Grasty v. Colorado Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015),  which is "largely a matter of litigational convenience," *Wachovia Bank* v. *Schmidt*, 546 U.S. 303, 316 (2006).

Venue defenses, of course, can be forfeited.  Thus, if a defendant in a federal suit fails to object with the first responsive pleading or motion that the suit was filed in an "improper venue," then the objection is deemed forfeited and lost forever under the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 12(h)(1). These "threshold defense[s]," the Advisory Committee opined, must all be "br[ought] forward" to "allow the court to do a reasonably complete job," as they "are of such a character that they should not be delayed."  Notes of Advisory Committee, Federal Rule of Civil Procedure 12 (1966).

**b**. There is no basis to depart from standard-fare forfeiture law in assessing the applicability of arbitration clauses.

"[T]he FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24 (1983)).  Rather, "[t]he federal policy is about treating arbitration contracts like all others." *Id*. at 412.  And there is nothing "unique" about a right to arbitrate, "prevent[ing] it from being" forfeited "like other rights." *Ins. Corp. of Ir.* v. *Compagnie Des Bauxites De Guinée*, 456 U.S. 694, 706 (1982).  Rather, the point is "to place such agreements upon the same footing as other contracts." *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302 (2010) (internal quotation marks omitted).  As the Supreme Court recently explained, "[i]f an ordinary procedural rule" such as "forfeiture" would "counsel against enforcement of an arbitration contract, then so be it[,]" because "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan*, 596 U.S. at 418–19.

This policy accords with the purposes of arbitration.  The Federal Arbitration Act prescribes that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  It provides that federal courts may compel arbitration when a dispute falls within their jurisdiction. *Id.* § 4.  Requiring arbitration to be raised at first opportunity on pain of forfeiture comports with these

9

prescriptions—it holds *both* parties to their arbitration bargain, including (notably) the defendant, who may be inclined to test the waters of the court system first, but should not (if the contract is to be enforced according to the FAA). *See Gunn v. NPC International, Inc.*, 625 F. App'x 261, 264-65 (6th Cir. 2015) (moving to "compel arbitration" "only after … obtain[ing] unfavorable rulings on its initial dispositive motions" indicates that "delay, instead of being attributable to an innocent or otherwise excusable purpose, was deliberately motivated by some perceived tactical advantage."); *compare Rush v. Oppenheimer & Co.*, 779 F.2d 885, 890 (2d Cir. 1985) (holding that the defendant had not waived its arbitration right in part because "[t]his is not an instance in which a party sensing an adverse court decision is, in effect, allowed a second chance in another forum") (quotation marks omitted).

### B.    The District Court Misapplied This Law

**1**. The district court did not apply blackletter law on forfeiture.  Instead, contrary to the guidance that "a court may not devise novel rules to favor arbitration over litigation," *Morgan*, 596 U.S. at 418, the district court applied the law on *waiver* to a question of forfeiture.  Thus, the district court required Plaintiff-Appellant to show "an intentional relinquishment or abandonment of a known right."  District Court Op. at 9, 10 n.1, and 11.  And in doing so, the district court cited cases on waiver, not forfeiture.  *See, e.g.*, *id*. at 9 (quoting *Nexteer*

10

*Automotive Corp. v. Mando America Corp.*, 886 N.W.2d 906 (Mich. Ct. App. 2016) for blackletter statement on what "waiver" requires).

This was error, plainly. The district court's citation to *Nexteer* illustrates this. The passage from *Nexteer* quoted by the district court (*see id.*) cites to the *Quality Prods.* decision from the Supreme Court of Michigan, discussed *supra* 6-7. But *Quality Prods.* ***expressly notes*** that "[w]hile ***waiver*** requires an intentional and voluntary relinquishment of a known right," by contrast, "a ***forfeiture*** is the failure to assert a right in a timely fashion." 666 N.W.2d at 261 (emphases added).

**2**. Prior statements of this Court, as well as the Supreme Court's decision in *Morgan*, do not suggest a contrary conclusion. At the most, those cases suggest that because courts in the past had "us[ed] the terminology of waiver," *Morgan*, 596 U.S. at 417, using the terminology of "waiver" to describe what is really a forfeiture would continue for the moment, *see Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 974 n.1 (6th Cir. 2024) (noting that this Court would "continue to use the language of waiver contained in our pre-*Morgan* caselaw" because "the parties in th[at] case d[id] not challenge that assumption").

Whatever the terminology used to describe the apparent gamesmanship undertaken by Defendant-Appellee (although forfeiture is the "technically correct" term, *Zuckerman Spaeder*, 646 F.3d at 922), the *label* cannot change the *analytical* framework for assessing problem. In this sense, words matter. Thus, even if one

11

uses "waiver" in the arbitration context to describe an alleged "failure to assert a right in a timely fashion," *Quality Prods.*, 666 N.W.2d at 261, the legal test applied cannot be the very different test—focusing on "intentional relinquishment," *id*. at 260 —demanded by the waiver analysis.

To do otherwise in effect redlines the defense of unintentional forfeiture from a plaintiff's toolbox for opposing a motion to compel under the FAA, thereby creating precisely the sort of policy disclaimed by the Supreme Court—one that favors "fostering arbitration" rather than simply "treating arbitration contracts like all others." *Morgan*, 596 U.S. at 418.  That is because demonstrating "waiver" may often be more demanding, given its emphasis on a showing of "intentional" relinquishment, and thus a plaintiff may be able to demonstrate forfeiture without necessarily showing waiver.  *Freytag v. Comm'r*, 501 U.S. 868, 894 n.2 (1991) (Scalia, J., concurring in part) ("Some rights may be forfeited by means short of waiver[.]").

## III.   THESE TITLE VII AND SECTION 1983 CLAIMS ARE NOT ARBITRABLE

Ms. Kloosterman brought a Title VII claim against the hospital, and 42 U.S.C §1983 and state-law claims against certain individual defendants.  The district court wrongly compelled arbitration as to all claims against all defendants. While this was erroneous for the reasons given above related to forfeiture, and for the reasons set forth in Plaintiff-Appellant's brief, *amicus curiae* also respectfully

12

highlights for this Court how the district court also erred insofar as Ms.

Kloosterman's Title VII claims and Section 1983 claims premised on religious

discrimination can only be adequately vindicated by a court of law, not an

arbitration center.[3]

  If "Congress itself has evinced an intention to preclude a waiver of judicial

remedies for the statutory rights at issue," then arbitration may not be compelled,

even if the parties "made the bargain to arbitrate[.]"  *Mitsubishi Motors Corp. v.

Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 628 (1985).

  ***Section 1983 claims***.  Ms. Kloosterman's Section 1983 should not be sent to

arbitration.  That is the teaching of *McDonald v. City of W. Branch, Mich.*, 466

U.S. 284 (1984).  There, in allowing an employee to bring a civil rights claim

under Section 1983 in court—even though there had been "an award in an

arbitration proceeding brought pursuant to the terms of a collective-bargaining

agreement"—the Supreme Court explained that because "[t]he very purpose

of § 1983 was to interpose the federal courts between the States and the people, as

guardians of the people's federal rights—to protect the people from

unconstitutional action under color of state law," *Mitchum v. Foster*, 407 U.S. 225,

---

[3] These arguments were made by Plaintiff-Appellant below, but not passed on by
the district court.  *See* Dkt. 76 at 13-26, *Kloosterman v. Metropolitan Hospital et
al.*, No. 22-cv-00944 (Nov. 30, 2023).

242 (1972), "arbitration . . . cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard," *McDonald*, 466 U.S. at 290.

Following *McDonald*, this Court, and district courts within the Circuit, have followed suit.  As this Court noted, "[t]he statutory right to have an Article III court adjudicate suits brought pursuant to § 1983 for vindication of rights secured by the First Amendment of the Constitution ***cannot be foreclosed by non-statutory arbitration*** conducted by a privately appointed decisionmaker." *Bromley v. Michigan Educ. Ass'n-NEA*, 82 F.3d 686, 692 (6th Cir. 1996) (emphasis added); *see also Westmoreland v. Sutherland*, No. 2009 WL 10722598, at *1 (N.D. Ohio Sept. 9, 2009) (citing *Bromley* and explaining "the Supreme Court and Sixth Circuit have expressly held that a federal court cannot apply the doctrines of res judicata and collateral estoppel to an arbitration award made pursuant to a collective bargaining agreement where the party is asserting a claim pursuant to Section 1983").

***Title VII.***  The same is true for Ms. Kloosterman's Title VII claims, which are interposed against the hospital.  In *Alexander v. Gardner-Denver*, a unanimous Supreme Court held that an employee's statutory right to challenge his discharge under Title VII was not foreclosed by prior submission of the dispute to arbitration. 415 U.S. 36 (1974).  The Court emphasized that Title VII and arbitration serve two

distinct purposes, and that because "[t]he purpose and procedures of Title VII indicate that Congress intended federal courts to exercise final responsibility for enforcement of Title VII," a "deferral to arbitral decisions would be inconsistent with that goal." *Id*. at 56. Thus, the Court explained, "the private right of action remains an essential means of obtaining judicial enforcement of Title VII," *id*. at 46, and so "arbitration" is "a comparatively inappropriate forum for the final resolution of rights created by Title VII," *id*. at 56; *see also id*. at 58 ("[A]rbitration [is] a less appropriate forum for final resolution of Title VII issues than the federal courts.").

The Supreme Court has reiterated this holding since *Alexander*. *See Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 750 (1981) ("Plainly, it would not comport with the congressional objectives behind a statute seeking to enforce civil rights protected by Title VII to allow the very forces that had practiced discrimination to contract away the right to enforce civil rights in the courts. For federal courts to defer to arbitral decisions . . . would have made the foxes guardians of the chickens.").[4] This Court has as well. *See McCall v.*

-------------------

[4] Even the dissent in *Barrentine* agreed with this fundamental proposition. 450 U.S. at 749 (Burger, C.J., dissenting) ("The congressionally created right under Title VII . . . was aimed at guaranteeing a workplace free from *discrimination*, racial and otherwise. That fundamental right is not and should not be subject to waiver by a collective-bargaining agreement[.]" (emphasis in original and citation omitted)).

*Chesapeake & Ohio Ry. Co.*, 844 F.2d 294, 298 (6th Cir. 1988) ("[T]he theory running through [*e.g.*, *Gardner-Denver*, and *Barrentine*] is that . . . different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.'" (cleaned up)).

***Additional Considerations***.  Requiring Ms. Kloosterman's Section 1983 and Title VII religious discrimination claims to be adjudicated in federal court and not arbitration also makes good sense.  "Vigorous enforcement of civil rights claims remains critical to enforcing antidiscrimination legislation" especially considering that "[e]mployers and others still possess the power and incentives to use private arbitration agreements to insulate themselves from liability for discriminatory behavior."  Jean R. Sternlight, *Compelling Arbitration of Claims Under the Civil Rights Act of 1866: What Congress Could Not Have Intended*, 47 U. Kan. L. Rev. 273, 332 (1999).

Indeed, the relief that may be afforded by arbitration tribunals for religious-discrimination plaintiffs does not mirror the broad range of relief that can be fashioned by courts; rather, "[a]rbitrators very often are powerless to grant the aggrieved employees as broad a range of relief."  *Barrentine*, 450 U.S. at 744–45.

Yet, different strands of equitable relief are critical for religious-discrimination plaintiffs, as illustrated here:  Ms. Kloosterman seeks, *inter alia*, an

16

"order that permanently enjoins and restrains Defendants from future such violations of Title VII, 42 U.S.C. Section 1983 and the United States Constitution;" and "[r]einstatement of Ms. Kloosterman in the position she would have occupied but for Defendants' discriminatory and retaliatory treatment of her." Dkt 69 at 48, *Kloosterman v. Metropolitan Hospital et al.*, No. 22-cv-00944 (Oct. 11, 2023).

Courts may fashion these remedies for plaintiffs such as Ms. Kloosterman, *see Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 467 (6th Cir. 1999) ("upon a finding of any intentional employment discrimination, a district court possesses broad discretion to craft an injunction that will ensure the employer's compliance with the law"), but it is uncertain to what extent arbitration tribunals may fashion such relief (or efficiently enforce compliance with their orders), *Barrentine*, 450 U.S. at 744.

## **CONCLUSION**

For the foregoing reasons, *amicus curiae* respectfully requests that this Court reverse the judgment and remand for discovery in district court.

Dated:  August 7, 2024
        New York, New York

                        Respectfully submitted,

                         /s/ Brian T. Goldman
                        Brian T. Goldman
                        HOLWELL SHUSTER & GOLDBERG LLP
                        425 Lexington Avenue, 14th Floor
                        New York, NY 10017
                        (646) 837-5150
                        bgoldman@hsgllp.com

                        *Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

1.    In compliance with Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6), the brief has been prepared in proportionally spaced Times New Roman font with 14-point type using Microsoft Word Office 365.

2.    Excluding the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(a)(7)(B) and Sixth Circuit Rule 32(b)(1), the brief contains 3,570 words.  As permitted by Federal Rule of Appellate Procedure 32(a)(7)(C), I have relied upon the word count feature of Microsoft Word Office 365 in preparing this certificate.


                                                  */s/ Brian T. Goldman*
                                                  Brian T. Goldman

August 7, 2024

**CERTIFICATE OF SERVICE**

I certify that on August 7, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system.  I certify that all participants are registered CM/ECF users and that the CM/ECF system will accomplish service.

*/s/ Brian T. Goldman*
Brian T. Goldman

August 7, 2024