# No. 24-1398

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

―――――――――――

VALERIE KLOOSTERMAN,

*Plaintiff-Appellant,*

v.

METROPOLITAN HOSPITAL ET AL.,

*Defendants-Appellees.*

―――――――――――

On Appeal from the United States District Court
for the Western District of Michigan
No. 1:22-CV-944-JMB-SJB

―――――――――――

### BRIEF FOR AMICI CURIAE THE STATES OF KANSAS AND NEBRASKA IN SUPPORT OF APPELLANT AND REVERSAL

―――――――――――

| | |
|---|---|
| KRIS W. KOBACH<br>*ATTORNEY GENERAL*<br>ANTHONY J. POWELL<br>*SOLICITOR GENERAL*<br>ERIN B. GAIDE<br>*ASSISTANT ATTORNEY GENERAL* | OFFICE OF THE ATTORNEY GENERAL<br>STATE OF KANSAS<br>120 SW 10TH AVE, 2ND FLOOR<br>TOPEKA, KANSAS 66612<br>(785) 368-8539<br><br>*Counsel for Amici* |

August 7, 2024

## TABLE OF CONTENTS

**IDENTITY AND INTEREST OF AMICI** ............................................................. 1

**SUMMARY OF ARGUMENT** .............................................................................. 2

**ARGUMENT** ............................................................................................................ 3

  1. An arbitration clause, by itself, does not prevent the Court from deciding constitutional issues. ............................................................................. 3
  2. Courts should not infer waiver of a right to vindicate constitutional and statutory rights. ................................................................................................. 6

**CONCLUSION** ...................................................................................................... 10

**CERTIFICATE OF COMPLIANCE** ................................................................. 12

**CERTIFICATE OF SERVICE** ........................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*Aetna Ins. Co. v. Kennedy*,
  301 U.S. 389 (1937) ..................................................................................8

*Alexander v. Gardner-Denver Co.*,
  415 U.S. 36 (1974) ................................................................................3, 4

*Barnard v. Lackawanna County*,
  696 F. Appx. 59 (3d Cir. 2017) ........................................................8, 9, 10

*Bauer v. City of Rossford*,
  No. 17-3498, 2018 WL 11438274 (6th Cir. Dec. 11, 2018) .......................7

*Brewer v. Williams*,
  430 U.S. 387 (1977) ..................................................................................7

*Curtis Pub. Co. v. Butts*,
  388 U.S. 130 (1967) ...............................................................................7, 8

*D.H. Overmyer Co. v. Frick Co.*,
  405 U.S. 174 (1972) ..................................................................................7

*Democratic Nat. Comm. v. Republican Nat. Comm.*,
  673 F.3d 192 (3d Cir. 2012) ......................................................................8

*Engquist v. Oregon Dep't of Agr.*,
  553 U.S. 591 (2008) ..................................................................................2

*Erie Telecommunications, Inc. v. City of Erie*,
  853 F.2d 1084 (3d Cir. 1988) ....................................................................7

*Graham v. City of Mentor*,
  118 F. Appx. 27 (6th Cir. 2004) ................................................................6

*Johnson v. Zerbst*,
  304 U.S. 458 (1938) ...................................................................................7

*McDonald v. City of W. Branch*,
  466 U.S. 284 (1984) ...........................................................................4, 5, 6

*Miranda v. Arizona*,
  384 U.S. 436 (1966) ...................................................................................7

*Nance v. Goodyear Tire & Rubber Co.*,
  527 F.3d 539 (6th Cir. 2008) .....................................................................5

*Sambo's Rest., Inc. v. City of Ann Arbor*,
  663 F.2d 686 (6th Cir. 1981) ..................................................................7, 8

*Sutton v. Cleveland Bd. of Educ.*,
  958 F.2d 1339 (6th Cir. 1992) ....................................................................4

**Statutes**
42 U.S.C. § 1983 ...........................................................................1, 5, 6

## IDENTITY AND INTEREST OF AMICI

Amici States of Kansas and Nebraska are sovereign states responsible for protecting the civil rights of their citizens. They are also responsible as employers for running government workplaces. When a government employee is aggrieved by workplace conditions, he or she may bring a claim against the employing agency. The States may resolve some of these claims quickly and efficiently through arbitration. However, when a disagreement arises between a State and its citizens that concerns their constitutional or civil rights, the State's agents, acting on behalf of the State as a sovereign, are subject to suit through 42 U.S.C. § 1983. In these cases, the courts, not an arbitrator, should ordinarily resolve the dispute.

Citizens might in some circumstances waive their rights to vindicate their constitutional claims in court. And while it is an unsettled question whether a government employer can mandate the use of arbitration when its employee-citizens claim a violation of their constitutional rights under § 1983, one thing is clear: at a minimum, any waiver of one's rights must be knowing and voluntary.

Courts should not presume this type of waiver lightly. In other contexts, such as when the Fifth Amendment right to silence is implicated, the government must show that a person has voluntarily, knowingly, and intelligently waived his or her rights before using such person's speech against that person. The standard also applies when, reversely, the government seeks to censor speech.

1

While there will always be some tension between a State's dual role as an employer and sovereign, Amici ask the Court not to allow the former role to completely overtake the later. If an employee can waive constitutional claims against a government employer, Amici ask the Court to hold that such a waiver must be knowing and voluntary. Because that was not done in this case, Amici file this brief in support of Plaintiff-Appellants and respectfully request that this Court reverse the district court.

## SUMMARY OF ARGUMENT

Government employees do not give up their constitutional rights when they enter employment. "[A]lthough government employees do not lose their constitutional rights when they accept their positions, those rights must be balanced against the realities of the employment context." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 600 (2008). While it is unsettled whether a government employer can force an employee to arbitrate constitutional claims, one thing is clear: the government employer may not do so unless the employee clearly, knowingly, and voluntarily waived his or her right to vindicate such employee's constitutional claims in court.

# ARGUMENT

1. **An arbitration clause, by itself, does not prevent the Court from deciding constitutional issues.**

Whether a government employer may force an employee into arbitration when the employee has a constitutional or civil rights claim against the employer is an unsettled question. Regardless of the answer, a federal court will not be bound by an arbitrator's determinations concerning constitutional rights, nor does the choice to arbitrate preclude a later federal suit.

First, the decision of an arbitrator is not binding on a federal court in deciding a later-filed Title VII claim. In *Alexander v. Gardner-Denver Co.*, Alexander, a drill-operator, sued his former employer for wrongful discharge, alleging he was fired because of his race in violation of Title VII. 415 U.S. 36, 43 (1974). The employer asked the district court to grant summary judgment in its favor because an arbitrator had already found Alexander had been fired for cause (without discussing his allegations of race discrimination). *Id.* The district court, considering itself bound by the arbitrator's determination, did just that, holding that Alexander, "having voluntarily elected to pursue his grievance to final arbitration under the nondiscrimination clause of the collective-bargaining agreement, was bound by the arbitral decision and thereby precluded from suing his employer under Title VII." *Id.*

3

The Supreme Court reversed. It held that, assuming that the preconditions specified by the statute are met,[1] Title VII "vest[s] federal courts with plenary powers to enforce the statutory requirements." *Id.* at 47. There was "no suggestion" in the statutory text that the choice to arbitrate a claim foreclosed review of a claim by a federal court. *Id.* In addition, "Title VII's purpose and procedures strongly suggest that an individual does not forfeit his private cause of action if he first pursues his grievance to final arbitration." *Id.* at 49. *Cf. McDonald v. City of W. Branch*, 466 U.S. 284, 288 (1984) (Full Faith and Credit Statute does not apply to arbitration awards). Thus, an arbitrator's decision on a Title VII claim is not—and will not be—binding on any federal court hearing the same claim.

Second, the right to arbitration and the right to bring a claim in federal court are separate and independent rights. "[A] contractual right to submit a claim to arbitration is not displaced simply because Congress also has provided a statutory right against discrimination. Both rights have legally independent origins and are equally available to the aggrieved employee." 415 U.S. at 52; *see also Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1347 (6th Cir. 1992) ("Thus, because

---

[1] "[T]hese prerequisites were met when petitioner (1) filed timely a charge of employment discrimination with the Commission, and (2) received and acted upon the Commission's statutory notice of the right to sue." *Id.* (citing 42 U.S.C. § 2000e—5(b), (e), and (f)).

plaintiffs are asserting statutory rights that are independent of their contractual rights and are beyond the scope of the arbitrators' general authority, plaintiffs may assert those statutory rights independent of the arbitration process.").[2]  In addition, because arbitrators are bound by the private law of the contract, they may enter decisions that are antithetical to federal law.  *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 553 (6th Cir. 2008).  Federal courts are under no such obligation and may vindicate a plaintiff's civil rights even if he or she has ostensibly waived them via arbitration agreement.

Third, the Supreme Court has questioned whether arbitration is an appropriate forum to determine constitutional rights brought against a state under § 1983.  In *McDonald*, the Court raised numerous concerns, including, as relevant here: (1) that arbitrators may not have "the expertise required to resolve the complex legal questions that arise in § 1983 actions"; (2) that arbitrators "authority derives solely from the contract," and they may not have authority to enforce

---

[2] This is not necessarily the case for all statutory rights.  The Supreme Court and this Court have held rights under other statutes (for example, the Age Discrimination in Employment Act of 1967) could be sent to arbitration when the plaintiff did not show that Congress intended to preclude waiver of judicial review.  *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (internal brackets and quotation marks omitted) (holding claims brought under the Age Discrimination in Employment Act of 1967 could be sent to arbitration); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 312 (6th Cir. 1991) (same).  However, the *Gilmer* Court did not reverse its decision that courts could hear Title VII claims arbitration notwithstanding.

§ 1983; [and] (3) the rules of evidence do not apply to arbitration, thus arbitral "factfinding is generally not equivalent to judicial factfinding." 466 U.S. at 290–91. "It is apparent," the Court concluded, "that in a § 1983 action, an arbitration proceeding cannot provide an adequate substitute for a judicial trial." *Id.* at 292; *see also Graham v. City of Mentor*, 118 F. Appx. 27, 31 (6th Cir. 2004) ("While arbitrators' decisions do not have claim-preclusive effect on constitutional claims pursued under § 1983, the evidence supporting the arbitrators' decisions here is sufficient to show that non-speech reasons motivated Mentor.") (internal citation omitted).

Given this, it is questionable at best whether a government employer can force an employee into arbitration when the employee brings Title VII and constitutional claims against them. And even if the government employer is permitted to enforce an arbitration clause regarding these claims, the employee may still bring a claim in federal court. Ultimately, the court will decide whether an employee's rights have been violated.

### 2. Courts should not infer waiver of a right to vindicate constitutional and statutory rights.

The question of whether arbitration is proper in the first place, while important, is not something the Court needs to definitively resolve here for two reasons. First, as Ms. Kloosterman has aptly argued, Defendants waived their right to arbitration by litigating the case for well over a year. (Brief of Appellant, p. 19)

6

Second, Ms. Kloosterman *did not* waive her right to litigate her constitutional and civil rights claims in federal court.

"A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Waiver must be "knowing and intelligent." *Brewer v. Williams*, 430 U.S. 387, 403 (1977); see also *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (waiver of Fifth Amendment rights must be "made voluntarily, knowingly and intelligently"). This standard requires both comprehension of the right and an intentional relinquishment of it. *Brewer*, 430 U.S. at 403. While these cases involved criminal proceedings, "the Supreme Court has indicated that the standard for waiver is the same" in civil proceedings. *Bauer v. City of Rossford*, No. 17-3498, 2018 WL 11438274, at *3 (6th Cir. Dec. 11, 2018) (applying the knowing and intelligent standard to a party's waiver of constitutional rights in a contract case) (citing *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185 (1972)); see also *Erie Telecommunications, Inc. v. City of Erie*, 853 F.2d 1084, 1094 (3d Cir. 1988) (collecting cases). Importantly, courts, including this Court, have applied the standard in cases involving First Amendment rights. *See Sambo's Rest., Inc. v. City of Ann Arbor*, 663 F.2d 686, 691 (6th Cir. 1981); *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 143 (1967) (failure to raise First Amendment issue did not waive it). They have also applied it in the employment context.

7

Whether an employee has waived his or her constitutional rights by agreeing to arbitration is a matter of federal, not state, law for this Court to determine independently. *Sambo's Rest.*, 663 F.2d at 690. In doing so, the Court "must closely scrutinize" the claimed waiver and "indulge every reasonable presumption against a waiver." *Id.* (quoting *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937)). Courts should not lightly decide that a person has waived his or her constitutional rights. That is particularly true when, as here, the claimed rights arise out of the First Amendment. In such cases, evidence that the employee knowing and voluntarily waived their rights must be "clear and compelling." *Id.* (quoting *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 145 (1967)). Moreover, evidence of such a knowing and voluntary waiver is strongest "where the parties to the contract have bargaining equality and have negotiated the terms of the contract, and where the waiving party is advised by component counsel and has engaged in other contract negotiations." *Democratic Nat. Comm. v. Republican Nat. Comm.*, 673 F.3d 192, 205 (3d Cir. 2012).

The language of the clause is also relevant. For example, in *Barnard v. Lackawanna County*, the Third Circuit found a union had waived its members First Amendment right to participate in a strike, and so a fired employee could not bring suit against the employer when they were discharged for striking. 696 F. Appx. 59, 62 (3d Cir. 2017). The Court found the language of the clause in question was

8

"clear and unmistakable" given that it specifically defined the speech activity being waived and clearly provided that "the only question of fact as to whether an employee committed, performed or was responsible for any of the acts prohibited by this section, above, shall be subject to review through the grievance and arbitration procedure of this Agreement." *Id.* at 61–62.

Here, there is no evidence that Ms. Kloosterman knowingly and voluntarily waived her Title VII or constitutional rights, or that she knowingly and voluntarily waived the right to vindicate them in federal court. (Brief of Appellant, pp. 8-9). She did not have equal bargaining power with her employer, nor did she have the benefit of counsel. (Brief of Appellant, pp. 8-9). In fact, the entity she signed the original agreement with was a private entity and not the government employer she currently works for. Defendant-Appellant University of Michigan Health took over the clinic subsequent to Ms. Kloosterman's signing of the employment agreement. (Brief of Appellant, pp. 8-9).

More decisively, the plain language of the employment agreement does not evince any intent by Ms. Kloosterman to waive her First Amendment or Title VII rights. (Brief of Appellant, pp. 8-9). The employment agreement does not require Ms. Kloosterman to use any specific terminology or pronouns when referring to her patients or that she would be mandated to proscribe treatment against her best judgment and religious beliefs. (Brief of Appellant, pp. 8-9). In sum, Ms.

9

Kloosterman's employment agreement merely stated that "Any controversy, dispute or claims arising out of or relating to this Agreement, or the breach thereof, shall be settled in accordance with the then-existing rules of the American Arbitration Association and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The fees and expenses for such arbitration shall be paid equally by the Hospital and the Physician Assistant." (See 2d. Am. Compl. ex. D, R. 69-4, Page ID. 1301 as cited in Brief of Appellant, p. 8). *Compare Barnard*, 696 F. Appx. at 61. The Agreement is silent as to whether the duty to arbitrate includes constitutional or Title VII claims brought against nonparties to the contract.

Finally, a knowing waiver also protects against an employer utilizing arbitration as a potential fail-safe option should the employer lose in court. For example, in this case the Defendants-Appellees failed in their effort to get Ms. Kloosterman's case dismissed, and only then after losing that motion did they seek arbitration. Employers should not get two bites at the apple and be permitted to utilize such questionable litigation tactics when their employees' constitutional or civil rights are at stake.

## CONCLUSION

Ms. Kloosterman filed this case because her government employer fired her in violation of her First Amendment rights. No one should be forced to vindicate

10

such important rights through the informal and private process of arbitration as such fundamental rights should be decided by a neutral and detached court. However, to the extent arbitration can ever be an appropriate forum for litigating constitutional or civil rights claims, it should only be done when an employee knowingly and voluntarily agrees to it. That was not done here. The court should reverse.

Dated: August 7, 2024

MICHAEL T. HILGERS
   *Nebraska Attorney General*

Respectfully submitted,

/s/*Anthony J. Powell*
KRIS W. KOBACH
   *Kansas Attorney General*
Anthony Powell
   *Solicitor General*
Erin B. Gaide
   *Assistant Attorney General*
Office of the Kansas Attorney General
120 SW 10th Ave, 2nd Floor
Topeka, Kansas 66612
anthony.powell@ag.ks.gov
(785) 368-8539

*Counsel for Amici*

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's type-volume limitations of Fed. R. App. P. 32(a)(7)(b) because it contains 2,445 words, excluding portions exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b)(1).

This brief also complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in proportionally spaced typeface using Times New Roman 14-point font in Microsoft Word.

/s/*Anthony J. Powell*
Anthony Powell
*Solicitor General*

# CERTIFICATE OF SERVICE

Pursuant to Fed. R. App. P. 25(d) and 6 Cir. R. 25(f), I certify that a true and exact copy of this brief has been filed via the Court's electronic filing system on August 7, 2024. That system sends a Notice of Docket Activity to all registered attorneys in this case. Under 6 Cir. R. 25(f)(1)(A), "[t]his constitutes service on them and no other service is necessary."

    /s/*Anthony J. Powell*
    Anthony Powell
    *Solicitor General*