No. 24-1398

# In the United States Court of Appeals for the Sixth Circuit

VALERIE KLOOSTERMAN,
*Plaintiff-Appellant*,

v.

METROPOLITAN HOSPITAL, et al.
*Defendants-Appellees*.

On Appeal from the United States
District Court for the Western District of Michigan
No. 1:22-CV-944-JMB-SJB

## BRIEF OF AMICUS CURIAE THE CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS IN SUPPORT OF APPELLANT

John M. Reeves

REEVES LAW LLC
7733 Forsyth Blvd.,
Suite 1100–#1192
St. Louis, MO 63105
(314) 775-6985
reeves@appealsfirm.com
*Counsel for Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Amicus Curiae Christian Medical & Dental Associations has no parent companies, subsidiaries, or affiliates, and does not issue shares to the public.

## TABLE OF CONTENTS

Corporate Disclosure Statement ........ 2

Table of Contents ........ 3

Table of Authorities ........ 4

Statement of Interest and Summary of the Argument ........ 5

Argument ........ 8

I. As a matter of procedural due process, Kloosterman has a property interest in being able to litigate her claims against the individual defendants in court instead of arbitration. ........ 10

II. The employment agreement's text does not bind non-parties to an arbitration agreement, just as the Bankruptcy Code does not authorize courts to bind non-consenting third parties to bankruptcy agreements. ........ 12

Conclusion ........ 17

Certificate of Service ........ 17

Certificate of Compliance ........ 18

Addendum ........ A1

## TABLE OF AUTHORITIES

### Cases

*Dusenbery v. U.S.*,
534 U.S. 161 (2002) .......... 10

*Harrington v. Purdue Pharma L.P.*,
144 S.Ct. 2071 (2024) .......... passim

*In re Haque Estate*,
602 N.W.2d 622 (Mich. Ct. App. 1999) .......... 10

*Kennedy v. Bremerton School District*,
142 S.Ct. 2407 (2022) .......... 8

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982) .......... 10

*Love v. Detroit*,
170 Mich. 1 (Mich. 1912) .......... 10

*Masterpiece Cakeshop v. Colorado Civil Rights Commission*,
138 S.Ct. 1719 (2018) .......... 8

### Statutes

11 U.S.C. § 1123(b)(6) .......... 14

42 U.S.C. § 1983 .......... 8

9 U.S.C. § 10 .......... 11

9 U.S.C. § 11 .......... 11

### Rules

Fed. R. App. P. 29(a)(4)(E) .......... 5

## STATEMENT OF INTEREST AND SUMMARY OF THE ARGUMENT[1]

The Christian Medical & Dental Associations ("CMDA") is a non-profit, non-partisan 501(c)(3) organization that provides resources, programs, education, and services under the motto of "changing hearts in healthcare." It provides a public voice for its current membership of approximately 13,000 Christian healthcare professionals. Founded in 1931, CMDA is committed to bringing hope and healing to the world by educating, encouraging, and equipping healthcare professionals to serve with excellence and compassion, care for all people, and advance Biblical principles of healthcare within the Church and throughout the world. Its mission, philosophy, and examples of its work can be viewed at cmda.org.

CMDA has a longstanding interest in advocating for the dignity of the medical profession. This includes ensuring that Christian members of the medical profession can exercise their work without being forced to compromise their deeply-held religious beliefs and matters of

---

[1] In accordance with Fed. R. App. P. 29(a)(4)(E), no party's counsel authored this brief in whole or in part, and no party, party's counsel, or other person—besides amicus curiae—contributed money that was intended to fund preparing or submitting this brief.

conscience. This includes the belief—based on both faith and science—that there exists only two genders—male and female—and that these genders are immutable and nonfluid. CMDA's members nevertheless strive to provide the highest quality medical services to all—including those who may disagree with their views on gender.

Given CMDA's mission, it has a strong interest in the outcome of this case. The appellant--Valerie Kloosterman--is a committed Christian who spent 17 years serving as an outstanding physician-assistant at Metropolitan Hospital. 2d.Am.Compl., R.69, PageID1310-17, 1241-42. While her faith and reason maintain that there are only two immutable and nonfluid genders, *id*. at 1237-40, 1259, 1561, she has always provided medical treatment to individuals regardless of their own views on gender and whether they align with her own. *Id*. at 1242-43. To avoid offending any transgender patients while also adhering to her faith and reason, Kloosterman has always referred to transgender patients by their first name instead of using any pronouns at all. *Id*. at 1243. But when she requested an accommodation to opt-out of the hospital's policy mandating that all employees agree with its position that gender is fluid, *id*. at 1244-45, the individuals responsible for these

matters instead mocked her for her beliefs and arranged to have the hospital terminate her employment. *Id.* at 1248-49, 1323. Seeking justice, she brought two Section 1983 claims—one under the Free Exercise Clause and the other under the Equal Protection Clause—as well as a claim under Michigan's Civil Rights Act against the individuals involved in her termination. *Id.* at 1264, 1271, 1277. She also brought an employment discrimination claim under Title VII against the hospital itself. *Id.* at 1273. Both the hospital and the individual defendants seek to arbitrate these claims under Kloosterman's employment agreement with the hospital, even though the individual defendants are not themselves part of this agreement.

CMDA submits this brief urging this Court to reverse the granting of arbitration to the individual defendants.[2] As a committed Christian with deeply-held beliefs based on both her faith and reason, Kloosterman has both First Amendment and Equal Protection rights not to be singled out and discriminated against for her beliefs. Not only that, she also has the procedural due process right to litigate her causes

[2] CMDA does not take a position one way or the other on whether the hospital should also be denied arbitration.

of action in court instead of before an arbitrator. By seeking to arbitrate this case, the individual defendants are attempting to deprive Kloosterman, without her consent, of her procedural due process right to seek vindication of her religious freedom rights in court. This cannot stand.

## ARGUMENT

Kloosterman, like any other person with sincerely-held religious beliefs, has the right to be treated the same as her colleagues who may not share the same views that she does on matters like gender identity. These rights derive from both the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. *See Masterpiece Cakeshop v. Colorodo Civil Rights Commission*, 138 S.Ct. 1719 (2018); *Kennedy v. Bremerton School District*, 142 S.Ct. 2407 (2022). If her rights are violated—as they were here—she has the ability to vindicate these rights by bringing suit in either state or federal court pursuant to 42 U.S.C. § 1983 and any other state statute—in this case the Michigan civil rights statute. The employment agreement—which explicitly excludes the individual defendants from arbitration—cannot be used to deprive her of this right

to litigate her claim in court as opposed to before an arbitrator. Yet that is exactly what the individual defendants are doing. But neither procedural due process nor the text of the employment agreement authorize the district court to refer her claims against the individual defendants to arbitration. The individual defendants are seeking to escape litigation through arbitration even though they are not parties to the employment agreement, just as the individual members of the Sackler family sought to escape having to litigate claims against them arising out of the opioid crisis through the Bankruptcy Code even though they were not parties to any bankruptcy proceedings. *See Harrington v. Purdue Pharma L.P.*, 144 S.Ct. 2071 (2024). Just as the Supreme Court held that the text of the Bankruptcy Code did not authorize courts to discharge non-consenting third-parties from bankruptcy, so too this Court should hold that the employment agreement does not authorize the district court to compel arbitration against the individual defendants as non-parties to the employment agreement.

## I. As a matter of procedural due process, Kloosterman has a property interest in being able to litigate her claims against the individual defendants in court instead of arbitration.

"[A] cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982); *accord In re Haque Estate*, 602 N.W.2d 622, 627 (Mich. Ct. App. 1999) ("A right of action is as much property as is a corporeal possession.") (quoting *Love v. Detroit*, 170 Mich. 1, 4 (Mich. 1912)).[3] In other words, Kloosterman has a constitutional right to litigate her claims in court with all the accompanying benefits that such litigation entails—such as discovery, having a jury assess her claims for damages, having her litigation conducted in public, and being able to seek appellate review of the district court's final decision. She cannot be deprived of this property

[3] While *Logan* involved a challenge to a state law that deprived a litigant of his property interest in his cause of action, *see Logan*, 455 U.S. at 424-32, instead of a federal court order compelling arbitration like this case, this is a distinction without a difference since "the Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'" *Dusenbery v. U.S.*, 534 U.S. 161, 167 (2002).

right in her chose of action without her consent and absent appropriate compensation.

Here, Kloosterman never consented to sending her claims against the individual defendants to arbitration. The individual defendants are not parties to the employment agreement—only the hospital is. And arbitration does not provide Kloosterman with the same procedural safeguards as litigating in either state or federal court does. Unlike in court, Kloosterman will not have a jury to decide her damages claims against the individual defendants. And if the arbitrator denies her sought-after declaratory and injunctive relief, will be practically impossible for her to obtain reversal of such a ruling on appeal. This is because federal appellate courts must affirm an arbitrator's judgment in the absence of limited exceptions, none of which involve challenging the merits of an arbitrator's factual findings or application of the law. *See* 9 U.S.C. § 10; 9 U.S.C. § 11.

Given this discrepancy between the remedies available to Kloosterman in court versus in arbitration, it cannot be said that the district court's order compelling arbitration accords with procedural due process. At no time did Kloosterman agree to arbitrate her claims

against the individual defendants. She has a property right to assert her claims against the individual defendants in open court. This mandates reversal of the district court's order.

## II. The employment agreement's text does not bind non-parties to an arbitration agreement, just as the Bankruptcy Code does not authorize courts to bind non-consenting third parties to bankruptcy agreements.

Procedural due process concerns aside, the text of the employment agreement itself demonstrates that non-parties such as the individual defendants cannot be bound to arbitrate Kloosterman's claims against them. The text explicitly declares, "no other person [besides the parties] shall have the right to enforce any of the provisions contained herein." 2d.Am.Compl.ex.D, R69-4, PageID.1305. Given this language, it would be a blatant violation of the employment agreement's terms to force Kloosterman into arbitration on her claims against the individual defendants where it is undisputed that they are not parties to the employment agreement in the first place. If the text of an arbitration contract explicitly excludes non-parties from being able invoke it, it necessarily means that such non-parties may not piggyback onto it as a means of escaping litigation of a plaintiff's claims in court.

This inability of courts to compel arbitration for non-parties can be compared to how the Bankruptcy Code, by its own terms, does not empower courts to bind non-consenting, non-debtor third parties to a bankruptcy plan as a means of such non-debtors escaping having to litigate claims against them in court. *See Harrington v. Purdue Pharma*, 144 S.Ct. 2071 (2024). Purdue Pharma declared bankruptcy in the wake of the opioid epidemic, “one of the largest health crises in this nation’s history.” *Id*. at 2078 (cleaned up). It was undisputed that both Purdue Pharma and its owners—the Sackler family—had aggressively marketed the drug OxyContin as a safe painkiller despite knowing it was addictive. *Id*. Purdue Pharma declared bankruptcy, but the individual members of the Sackler family did not. *Id*. Nevertheless, the resulting bankrupcy plan discharged not only Purdue Pharma as the bankrupt entity from all claims arising out of the opioid epidemic, it purported to discharge all individual members of the Sackler family as well despite the fact that they were not bankrupt and not parties to the proceedings. *Id*. at 2078-81. It channeled all claims that victims of the opioid epidemic may have had against both Purdue Pharma and the Sacklers into a fund in which victims would receive a payment

depending on their particular factual circumstances. *See id*. at 2079-80. A large number of the opioid victims objected, arguing that "[o]ur system of justice . . . demands that the allegations against the Sackler family be fully and fairly litigated in a public and open trial, that they be judged by an impartial jury, and that they be held accountable to those they have harmed." *Id*. at 2079-80 (cleaned up).

The Supreme Court held that the bankruptcy court had no authority to discharge the individual members of the Sackler family from any potential lawsuits arising out of the opioid crisis, given that they were non-bankrupt, non-parties to the proceedings and that the opioid victims had objected to their discharge. *Id*. at 2081, 2087-88. It noted that the relevant portions of the Bankruptcy Code gave courts the discretion to "address claims and property belonging to a debtor or its estate." *Id*. at 2082. The only provision that could justify releasing the individuals of the Sackler family was one that enabled courts to "include any other appropriate provision not inconsistent with the applicable provisions of this title." *Id*. (quoting 11 U.S.C. § 1123(b)(6)). It rejected the argument that this broad provision somehow authorized bankruptcy courts to release non-bankrupt third parties where the

creditors like the opioid victims objected. Given that the rest of the Bankruptcy Code only authorized the courts to afford relief to the actual bankruptcy party, it made no sense, the Court held, to interpret the catch-all provision as somehow authorizing courts to release a non-party. *Id.* at 2083 ("Each of those 'other' paragraphs authorizes a bankruptcy court to adjust claims without consent only to the extent such claims concern the debtor. From this, it follows naturally that an 'appropriate provision' adopted pursuant to the catchall that purports to extinguish claims without consent should be similarly constrained."). Nothing in the Bankruptcy Code, the Court concluded, "suggests those claim [against the individual Sackler family members] can be bargained away without the consent of those affected, as if the claims were somehow Purdue's own property." *Id.* at 2084.

Just as the Sackers could not use the Bankruptcy Code to escape having to litigate the opioid victims' claims in court through bankruptcy discharge, so too the individual defendants here cannot use the FAA and the text of the employment agreement to escape having to litigate Kloosterman's claims in court through arbitration. And whereas the Bankruptcy Code at the very least had a vague catchall provision that,

when read outside of the rest of the Bankruptcy Code's context, could seem to say that non-parties could be discharged in bankruptcy without the other side's consent, nothing like that appears in the employment agreement at issue here. Rather than having a vague catchall provision, the employment agreement explicitly excludes any non-parties from being able to enforce its arbitration provisions. 2d.Am.Compl.ex.D, R69-4, PageID.1305.

The stakes for Kloosterman in this case are no less than the stakes were for the opioid victims in *Purdue Pharma*. Suffering the effects of religious discrimination—like Kloosterman suffered here at the hands of the individual defendants—is no less a travesty than suffering from the opioid epidemic at the hands of the Sacklers. First Amendment and Equal Protection claims are just as important as general tort claims of substance abuse. Both of them deserve their full day in court. The Supreme Court rightly held that non-parties could not use the Bankruptcy Code to escape from having to litigate claims against them in court. Likewise, non-parties to an arbitration agreement should not be able to use the FAA to escape having to litigate claims against them in court.

## CONCLUSION

This Court should reverse the granting of arbitration and allow Kloosterman to exercise her property right of litigating her Section 1983 and Michigan civil rights claims in federal court. Her constitutional rights to religious liberty and equal protection demand no less.

Respectfully submitted,

*/s/ John M. Reeves*

John M. Reeves
*Lead Counsel*
REEVES LAW LLC
7733 Forsyth Blvd.,
Suite 1100–#1192
St. Louis, MO 63105
(314) 775-6985
reeves@appealsfirm.com
*Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on **August 7, 2024,** I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ John M. Reeves*

## CERTIFICATE OF COMPLIANCE

I certify that this brief contains **2,428** words, excluding those parts exempted by Fed. R. App.P. 32(f). I further that certify this brief complies with the typeface requirements of Fed. R. App.P. 32(a)(5) and the type style requirements of Fed. R. App.P. 32(a)(6) as it is written in proportionally-spaced, 14-point Century font using Microsoft Office Word 2016.

*/s/ John M. Reeves*