No. 24-1398

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

———————————

VALERIE KLOOSTERMAN,

*Plaintiff-Appellant,*

v.

METROPOLITAN HOSPITAL ET AL.,

*Defendants-Appellees.*

———————————

On Appeal from the United States District Court
for the Western District of Michigan
No. 1:22-CV-944-JMB-SJB

———————————

**BRIEF OF ARBITRATION PRACTITIONERS AND SCHOLARS AS
AMICI CURIAE IN SUPPORT OF PLAINTIFF-APPELLANT**

———————————

RICHARD D. FAULKNER
12770 Coit Road, Suite 720
Dallas, TX 75251
(972) 427-1500
rfaulkner@faulkneradrlaw.com

CHARLES BENNETT
12770 Coit Road, Suite 720
Dallas, TX 75251
(972) 427-1500
cbennett@bennettlegal.com

PHILIP J. LOREE JR.
*Counsel of Record*
THE LOREE LAW FIRM
11 Broadway, Suite 615
New York, NY 10004
(646) 253-0560/(516) 627-1720
(516) 941-6094 (M)
PJL1@LoreeLawFirm.com

*Counsel for Amici Curiae*

August 7, 2024

**CORPORATE DISCLOSURE STATEMENT**

Arbitration Practitioners and Scholars as *Amici Curiae* in support of
Plaintiff-Appellant Valerie Kloosterman certify under 6 Cir. R. 26.1 that they are
natural persons and that they are unaware of any publicly-owned corporation not a
party to the appeal that has a financial interest in the outcome.

/s/ Philip J. Loree Jr.
Philip J. Loree Jr.

*Counsel of Record for
Arbitration Practitioners and
Scholars as Amici Curiae in
Support of Plaintiff-Appellant
Valerie Kloosterman*

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF AUTHORITIES..................................................................... iv

IDENTITY AND INTERESTS OF AMICI CURIAE...............................................1

FRAP 29(a)(4)(A) AND (E) STATEMENT ...............................................................2

I.    THE DISTRICT COURT'S CONCLUSION ON WAIVER OR FORFEITURE
WAS FLAWED BECAUSE IT FAILED TO DEEM  INCONSISTENT WITH
ARBITRATION DEFENDANTS' MOTIONS TO DISMISS ON THE MERITS...6

A.    Introduction .....................................................................6

B.    The District Court Erred by Ruling that the Hospital's Unsuccessful
Submission of the Merits Disputes to the Court Did not Evidence Actions
Inconsistent with Arbitration...................................................................7

II.   EVEN WERE THERE NO FORFEITURE, THE DISTRICT COURT COULD
NOT LAWFULLY COMPEL ARBITRATION OF THE CLAIMS AGAINST THE
INDIVIDUAL DEFENDANTS.................................................................11

A.    The Individual Defendants are Not Parties to the Employment Agreement
and the Ms. Kloosterman's Claims Against them Are Materially Different from
the Claims She Asserts Against the Hospital.......................................................11

B.    The Court Cannot Compel Ms. Kloosterman to Arbitrate with the
Individual Defendants Unless Ms. Kloosterman Agreed to Arbitrate with the

Individual Defendants or Michigan Law Applicable to Contracts Generally

Permits the Individual Defendants to Enforce the Contract ...............................12

C.      The Employment Agreement Expressly Bars The Individual Defendants

from Enforcing the Agreement, Including its Arbitration Provision ..................14

D.      The District Court Erred by Concluding that Agency Principles Permitted

the Individual Defendants to Enforce the Arbitration Agreement ......................16

1.      *Altobelli* is Distinguishable and Inapplicable Here ...............................17

2.      Even if *Altobelli* Could be Legitimately Construed to Authorize the

Individual Defendants to Invoke the Arbitration Agreement in Appropriate

Circumstances, those Circumstances do not Exist Here..................................20

III.  EVEN IF THE FORFEITED ARBITRATION AGREEMENT COULD BE
ENFORCED, THE COURT WOULD BE REQUIRING MS. KLOOSTERMAN
TO ARBITRATE HER CONSTITUTIONAL, STATUTORY AND CIVIL RIGHTS
CLAIMS BEFORE THE AAA, AND AAA APPOINTED ARBITRATORS,
WHICH HAVE AN INSTITUTIONAL, PRO DIVERSITY, EQUITY AND
INCLUSION BIAS ...............................................................................................23

CONCLUSION .....................................................................................................29

CERTIFICATE OF COMPLIANCE .....................................................................30

CERTIFICATE OF SERVICE ..............................................................................31

# TABLE OF AUTHORITIES

**Cases**

*AFSCME Council 25 v. County of Wayne*, 292 Mich. App. 68, 81 (2011)..............13

*Altobelli v. Hartmann*, 499 Mich. 284 (2016).................................................. passim

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009) ............................13

*AtriCure, Inc. v. Meng*, 12 F.4th 516, 524 (6th Cir. 2021)................................ 13, 16

*Badiee v. Brighton Area Schools*, 265 Mich. App. 343, 369 (2005).......................15

*Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 398 (5th Cir. 2006)..............................21

*Cabinetree of Wis. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995) 10

*City of Detroit Police & Fires Ret. Sys. v. GSC CDO Fund Ltd.*, No. 289185, 2010

    WL 1875758, at *6 (Mich. Ct. App. May 11, 2010)..................................... 21, 22

*Cole v Burns International Security Services*, 105 F.3d 1465, 1476 (DC Cir 1997)

    .................................................................................................................27

*Dumont v. Sask. Gov't Ins.*, 258 F.3d 880, 886-87 (8th Cir. 2001) ............................9

*Equal Emp't Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)

    .................................................................................................................13

*Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981)...........9

*Floss v Ryan's Family Steak Houses, Inc*, 211 F.3d 306, 314 (6th Cir 2000).........26

iv

*Forby v. One Techs., L.P.*, 909 F.3d 780, 784-86 (5th Cir. 2018) ...........................10

*Gilmer v Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) ...............................27

*Granite Rock Co. v. Teamsters*, 561 U. S. 287, 299 (2010)....................................12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) .......13

*Hooper v. Advance Am., Cash Advance Centers Of Mo., Inc.*, 589 F.3d 917, 922 (8th

   Cir. 2009) ...........................................................................................8, 9

*Howard Univ. v. Metro. Campus Police Officer's Union*, 519 F. Supp. 2d 27

   (D.D.C. 2007)......................................................................................23

*In re Pawn Am. Consumer Data Breach Litig.*, ___ F.4th ___, 2024 WL 3366702,

   at *7 (8th Cir. July 11, 2024)................................................................10

*Kammer Asphalt Paving Co. v. East China Township Schools*, 443 Mich. 176, 190

   (1993) ...................................................................................................15

*King v. Russell*, 278 Mich. 529, 533-34 (Mich. 1936)...........................................20

*Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) ..................25

*Lamps Plus, Inc. v. Varela*, 587 U. S. 176, 184 (2019)..........................................12

*Llewellyn-Jones v. Metro Property Group, LLC*, 22 F. Supp. 3d 760, 787 (E.D.

   Mich. 2014).........................................................................................20

*Long v. Mount Carmel Health Sys.*, 93 N.E.3d 436, 442-43, ¶¶ 14-18 (Ohio Ct.

   App. 2017) ......................................................................................15

*Mitsubishi v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)................27

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022)............................................... passim

*Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 150 F.3d 545, 548-49 (6th Cir. 1998) 15

*Nationwide Mutual Insurance v. Home Ins. Co.*, 330 F.3d 843, 846-47 (6th Cir.

   2003) ...............................................................................................13

*Republic of Arg. v. AWG Grp.*, 894 F.3d 327, 333 (D.C. Cir. 2018).......................23

*Riddle v. Lacey Jones*, 135 Mich. App. 241, 246-47 (1984)...................................19

*Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 975 (6th Cir. 2020) ............ 3, 4, 6, 8

*Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 683-84 (2010) 5, 14, 15

*Tobel v. AXA Equitable Life Ins. Co.*, No. 2298129, 2012 WL 555801, at *11.......22

*Town of Davie Police Pension Plan v. Pier 1 Imps., Inc.*, 325 F. Supp. 3d 728, 746

   n.3 (N.D. Tex. 2018) .........................................................................25

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior*

   *Univ.*, 489 U.S. 468, 479 (1989) ........................................................14

*White v. Samsung Elecs. Am.*, 61 F.4th 334, 340 & n.27 (3d Cir. 2023) .................10

**Statutes**

9 U.S.C. § 3 ................................................................................................10

9 U.S.C. § 4 ................................................................................................10

Mich. Comp. Laws § 600.1405 ...................................................................16

Michigan's Limited Liability Company Act, MCL 450.4101, et seq. .....................17

**Other Authorities**

2 Restatement Agency, 2d, § 320, p. 67 ....................................................19

9 U.S.C. § 2 ........................................................................................ 13, 26

AAA Website, Arbitrators & Mediators, Roster Diversity, Equity & Inclusion

(https://www.adr.org/RosterDiversity) ...............................................25

AAA® Establishes New Leadership Role, Appointing Ingeuneal C. Gray as Vice

President of Diversity, Equity and Inclusion (AAA Press Release May 22, 2024)

(https://www.adr.org/sites/default/files/document_repository/PR_DEI_VP.pdf.24

Putting Diversity into Practice (AAA 2023)

(https://www.adr.org/sites/default/files/document_repository/AAA182_AAA_IC

DR_Putting_Diversity_into_Practice.pdf) ...........................................25

Samuel Estreicher, Arbitration of Employment Disputes without Unions, 66 Chi

Kent L Rev 753, 777 (1990) ...............................................................27

## Rules

6 Cir. R. 26.1 ................................................................................................ i

Fed. R. App. P. 29(a)(2) ............................................................................2

Fed. R. App. P. 29(a)(4)(A) .......................................................................2

Fed. R. App. P. 29(a)(4)(E)(i) ....................................................................2

Fed. R. App. P. 29(a)(4)(E)(ii) ...................................................................2

Fed. R. App. P. 29(a)(4)(E)(iii) ..................................................................2

Fed. R. Civ. P. 12(b)(6) ................................................................... 3, 6, 8, 9

Fed. R. Civ. P. 41(b) ...................................................................................9

## Treatises

21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed.2001) ..........................13

## IDENTITY AND INTERESTS OF AMICI CURIAE

*Amici* are arbitration practitioners, scholars and authors whose practice, speaking, writing, and teaching focuses on arbitration, arbitration law and arbitration-related litigation. The *Amici* are Richard D. Faulkner, principal attorney for Faulkner ADR Law, and of Counsel for Bennett Legal, 12770 Coit Road, Suite 720, Dallas, TX 75251; Charles Bennett, a highly accomplished arbitration and trial attorney and the lead attorney for Bennett Legal, 12770 Coit Road, Suite 720, Dallas, TX 75251; and Philip J. Loree Jr., principal attorney of The Loree Law Firm, 11 Broadway, Suite 615, New York, NY 10004.

*Amici* are concerned the ruling in this case may undermine the foundation of party consent recognized and required by the Federal Arbitration Act (the "FAA") and the FAA's framework for the allocation of power between courts and arbitrators. For example, if affirmed, the district court's judgment will make it more difficult than before to establish litigation conduct inconsistent with arbitration, especially in cases where a defendant has moved to dismiss on the merits. It would  enable an agent of a disclosed contract-signatory principal to enforce a contract not made for its benefit, even where, as here, the parties expressly agreed to bar third-party enforcement.

As arbitration practitioners who regularly represent clients in arbitration-related disputes, *Amici* have an interest in expressing their views concerning the

1

adjudication of important issues concerning the FAA, and this case certainly involves such issues. They have prepared this brief to assist the Court's evaluation and resolution of those issues.

## FRAP 29(a)(4)(A) AND (E) STATEMENT

*Amici* file this brief in their individual capacities, not as representatives of any organizations with which they are affiliated. *See* Fed. R. App. P. 29(a)(4)(A).

This brief was authored by *Amici*. No party's counsel authored the brief in whole or part. *See* Fed. R. App. P. 29(a)(4)(E)(i). No party or a party's counsel contributed money that was intended to fund preparing or submitting the brief. *See* Fed. R. App. P. 29(a)(4)(E)(ii). No other person contributed money that was intended to fund preparing or submitting the brief. *See* Fed. R. App. P. 29(a)(4)(E)(iii).

Plaintiff-Appellant consented to the filing of this brief but Defendants-Appellees have refused to consent. *See* Fed. R. App. P. 29(a)(2) & 29(a)(6).

## SUMMARY OF ARGUMENT

The dispute before the Court raises numerous arbitration-law issues but *Amici* direct their focus on three.[1]

---

[1]*Amici*'s decision not to address every issue raised by Ms. Kloosterman in her excellent opening brief should not be construed to suggest that *Amici* disagree with any of her positions.

First, as respects waiver or forfeiture[2], we underscore one of multiple, material errors in the district court's opinion: the district court's failure to accord dispositive weight to defendants' two motions to dismiss this case on its merits. Before *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022)—which eliminated consideration of "prejudice" from the forfeiture calculus—this Court (and many others) required one seeking forfeiture of arbitration to establish: (a) litigation conduct "completely inconsistent with any reliance on an arbitration agreement;" and (b) resulting delay in the assertion of the arbitration agreement "to such an extent that the opposing party incurs actual prejudice." *Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 975 (6th Cir. 2020) (citations and quotations omitted). Even under that demanding standard, this Court would find that moving to dismiss on the merits under Fed. R. Civ. P. 12(b)(6) easily satisfied the first prong, and, because of delay, easily satisfied the prejudice prong as well. *See, e.g., Solo*, 947 F.3d at 975-76 & 976-77.

But the district court here reached an anomalous and unjust decision here. It did not purport to require a showing of prejudice but held (without discussing *Solo*) that the motions to dismiss on the merits in this case, even combined with all the

---

[2] Ms. Kloosterman uses the term "forfeiture", rather than "waiver", to describe the legal effect of a party engaging in litigation conduct inconsistent with an intent to submit disputes to arbitration. *Amici* shall do the same.

3

other litigation-related conduct Defendants-Appellants engaged in over a 13-month period somehow did *not* constitute conduct inconsistent with an intent to rely on an arbitration agreement. Order, R.79, PageID.1591-93.

The district court thus found that there was no waiver in this post-*Morgan* case under facts that had, in *Solo* and other pre-*Morgan* cases, been held to establish conduct inconsistent with arbitration, and to have at least contributed to a finding of prejudice. The district court conclusion is thus foreclosed by *Solo* and other case law. (See Point I.)

Second, *Amici* discuss in Point II how the district court erroneously allowed certain of the Defendant-Appellees (the "Individual Defendants")—who were employees or officers of Defendant-Appellee Metropolitan Hospital (the "Hospital")—to enforce against Ms. Kloosterman the arbitration agreement in Ms. Kloosterman's employment agreement with the Hospital (the "Employment Agreement").

The district court erred by ignoring the text of the Employment Agreement, which provides that it "shall be enforceable *only* by the parties hereto . . . and no other person shall have the right to enforce any of the provisions contained herein." 2d.Am.Compl.ex.D, R.69-4, PageID.1305 (emphasis added). Such provisions are fully enforceable under Michigan law and the law of a number of other jurisdictions. (See Point II.C.)  And the FAA compels courts and arbitrators to

4

enforce the terms of the parties' agreement, including terms, like the provision at issue here, that specify *with whom* [the parties] choose to arbitrate their disputes." *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 683-84 (2010). (Point II.C)

Even apart from ignoring the parties' express agreement to preclude the Individual Defendants from enforcing the Employment Agreement, the district court erred by concluding that, under the facts of this case, agency principles warranted enforcement of the Agreement. We explain why that conclusion is legally unsupportable in Point II.D.

Third, and finally, *Amici* discuss how the American Arbitration Association (the "AAA"), and any arbitrator on its roster, is institutionally biased as evidenced by numerous statements the AAA make in their website (which this Court can judicially notice) about diversity, equity, and inclusion ("DEI"), a controversial topic that is at the center of the merits dispute between Ms. Kloosterman and the Defendant-Appellants. While, to our knowledge, Ms. Kloosterman has not challenged the AAA for institutional bias yet, we believe our discussion of this bias lends helpful context in terms of understanding what additional woes may befall Ms. Kloosterman if the district court's judgment is affirmed.

# ARGUMENT

## I.    THE DISTRICT COURT'S CONCLUSION ON WAIVER OR FORFEITURE WAS FLAWED BECAUSE IT FAILED TO DEEM INCONSISTENT WITH ARBITRATION DEFENDANTS' MOTIONS TO DISMISS ON THE MERITS

### A.    Introduction

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) eliminated consideration of "prejudice" from the forfeiture calculus, but prior to that this Court (and others) required one seeking forfeiture of arbitration to establish: (a)  litigation conduct "completely inconsistent with any reliance on an arbitration agreement;" and (b) resulting delay in the assertion of the arbitration agreement "to such an extent that the opposing party incurs actual prejudice." *Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 975 (6th Cir. 2020) (citations and quotations omitted). Even under that demanding standard, this Court would find that moving to dismiss on the merits under Fed. R. Civ. P. 12(b)(6) satisfied the first prong, and, because of delay, was able to satisfy the prejudice prong, too. See, e.g., *Solo*, 947 F.3d at 975-76 & 976-77.

The district court here committed a grave error. Contrary to the caselaw of this court and others, the district court failed to recognize that the motions to dismiss—let alone all the other litigation conduct—was clearly inconsistent with an intent to arbitrate. (See Point I.B.)

6

This produced an anomalous post-*Morgan* outcome: what would clearly have been conduct that would be deemed inconsistent with arbitration under pre-*Morgan* case law is under the district court's post-*Morgan* order, considered conduct that is *consistent* with arbitration. And the district court's reasoning, were it applied to facts identical to those in *Solo*—in which this Court determined that the filing of a motion to dismiss on the merits was not only inconsistent with an intent to arbitrate but caused a prejudicial delay, 947 F.3d at 975-77— would demand an entirely different outcome: no forfeiture.

B.    The District Court Erred by Ruling that the Hospital's Unsuccessful Submission of the Merits Disputes to the Court Did not Evidence Actions Inconsistent with Arbitration

Ms. Kloosterman has established in her opening brief that the defendant's conduct in this action, including its filing of her motions to dismiss, strongly supports a forfeiture finding. See Appellant's.Br., Dkt#36, Point.I.A.

But the district court seemed to think that, because the conduct inconsistent with arbitration prong considers the "totality of the circumstances," making a motion to dismiss on the merits somehow does not establish forfeiture. Order, R.79, PageID.1591-93. The law in this Circuit and elsewhere is to the contrary, but the district court ignored it. *Id*.

Even before *Morgan*—back when this Court required not only inconsistency but also prejudice, and back when doubts about forfeiture were, contrary to

7

*Morgan*, 596 U.S. at 418-19, resolved in favor of arbitration—this Court in *Solo v. United Parcel Serv. Co.*, 947 F.3d 968 (6th Cir. 2020), held that by making a Fed. R. Civ. P. 12(b)(6) motion to dismiss the case (let alone two such motions) on the merits, the defendant engaged in "actions. . . inconsistent with reliance on an arbitration agreement." 947 F.3d at 975. The *Solo* plaintiffs were able to show the then-in-effect requirement of prejudice because of the delay that ensued between the making of the motion to dismiss and the date on which this Court overturned the district court's grant of the motion to dismiss, and because defendants obtained discovery from plaintiffs during that long delay period. *See Solo*, 947 F.3d at 976-77. Today, of course, no such showing is required. *See Morgan*, 596 U.S. at 417-19.

*Solo* demonstrates that a defendant's substantially invoking the litigation machinery by moving to dismiss on the merits constitutes forfeiture because it is action inconsistent with a reliance on arbitration. Acknowledging that "'[n]ot every motion to dismiss is inconsistent with the right to arbitration,'" 947 F.3d at 975 (quoting *Hooper v. Advance Am., Cash Advance Centers Of Mo., Inc.*, 589 F.3d 917, 922 (8th Cir. 2009) (collecting cases)), this Court explained that, "[f]or example," "'a motion to dismiss raising 'jurisdictional and quasi-jurisdictional grounds' but seeking 'no action with respect to the merits of the case' is not inconsistent with later seeking arbitration." 947 F.3d at 975 (citing and quoting

*Dumont v. Sask. Gov't Ins.*, 258 F.3d 880, 886-87 (8th Cir. 2001)). Likewise, there is no forfeiture when defendants seek to dismiss nonarbitrable claims. 947 F.3d at 975 (citation omitted).

But "a motion to dismiss that seeks 'a decision on the merits' and 'an immediate and total victory in the parties' dispute' is entirely inconsistent with later requesting that those same merits questions be resolved in arbitration." 947 F. 3d at 975 (quoting *Hooper*, 589 F.3d at 922).

That is exactly what has occurred here. The motions to dismiss sought a dismissal on the merits under Fed. R. Civ. P. 12(b)(6), which, if successful, would have resulted in an adjudication on the merits in favor of the Defendants. Fed. R. Civ. P. 41(b); *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits[]'") (citations omitted).

The arbitration agreement, like others, requires the parties to submit disputes falling within its scope to arbitration for resolution. That is the principal undertaking of a predispute arbitration agreement like the one at issue here and in so many other cases.

But the Hospital, after being sued, filed two dispositive motions—motions to dismiss for failure to state a claim, Fed. R. Civ. P. 12(b)(6)—each of which

9

submitted to the *Court* the question whether Ms. Kloosterman's claims should be dismissed with prejudice.

While the other inconsistent-with-arbitration conduct relied upon Ms. Kloosterman likewise supports a finding of forfeiture (see Appellant's.Br., Dkt#36, Point.I.A.), the filing of the motions to dismiss—without seeking a stay of litigation pursuant to 9 U.S.C. § 3 or a motion to compel arbitration pursuant to 9 U.S.C. § 4—was conduct squarely inconsistent with the pursuit of arbitration. A party pursuing arbitration would not submit merits-related issues to the Court. It would, pursuant to the arbitration agreement's principal undertaking, submit them to arbitration. Apart from those already cited, courts from other circuits that agree include, among others: *In re Pawn Am. Consumer Data Breach Litig.*, ___ F.4th ___, 2024 WL 3366702, at *7 (8th Cir. July 11, 2024); *White v. Samsung Elecs. Am.*, 61 F.4th 334, 340 & n.27 (3d Cir. 2023); *Forby v. One Techs., L.P.*, 909 F.3d 780, 784-86 (5th Cir. 2018).

Permitting defendants to dodge a forfeiture finding despite having moved to dismiss claims on the merits encourages a particularly pernicious form of gamesmanship under which, to paraphrase former Circuit Judge Richard D. Posner, the defendant "want[s] to play heads I win, tails you lose." *Cabinetree of Wis. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995). The Hospital engaged in that type of gamesmanship here.

10

It was a common form of gamesmanship before *Morgan* removed the prejudice requirement for forfeiture: In response to a lawsuit that is allegedly arbitrable, make a dispositive motion to dismiss. If the Court grants the motion, all the better. No need to bother with arbitration. And if the Court does not dismiss the action, then ask the court to order arbitration.

The generally more economically powerful arbitration proponent gets multiple bites at the proverbial apple, the ultimate resolution of the matters is delayed, the plaintiff's time and money resources are consumed, and, absent a finding of prejudice, the completely inconsistent nature of the arbitration proponent's conduct goes unpunished. *Morgan* was supposed to have changed all that but not according to the district court.

The Hospital and the Individual Defendants forfeited arbitration.

## II.    EVEN WERE THERE NO FORFEITURE, THE DISTRICT COURT COULD NOT LAWFULLY COMPEL ARBITRATION OF THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

### A.    The Individual Defendants are Not Parties to the Employment Agreement and the Ms. Kloosterman's Claims Against them Are Materially Different from the Claims She Asserts Against the Hospital

The only arbitration agreement in this case is contained in the employment agreement between Ms. Kloosterman and the Hospital. None of the individual defendants—Pai, Book, Cole, Pierce, or Smith— is a signatory of or party to that employment agreement.

11

Not only are the Individual Defendants not parties to the employment agreement but there is no overlap between the claims she makes against the Hospital and the claims she makes against the Individual Defendants. Ms. Kloosterman asserts four claims, only one of which is against the Hospital:

1. A §1983 free-exercise claim against the individual defendants in their official and personal capacities;

2. A §1983 equal-protection claim against the individual defendants in their official and personal capacities;

3. A Title VII religious-discrimination and disparate-treatment claim against the hospital; and

4. A Michigan-law civil-rights claim against the individual defendants in their personal capacities.

2d.Am.Compl, R.69, PageID.1264-78.

B.    The Court Cannot Compel Ms. Kloosterman to Arbitrate with the Individual Defendants Unless Ms. Kloosterman Agreed to Arbitrate with the Individual Defendants or Michigan Law Applicable to Contracts Generally Permits the Individual Defendants to Enforce the Contract

The "first principle" of federal arbitration law is that "arbitration is strictly a matter of consent.'" *Lamps Plus, Inc. v. Varela*, 587 U. S. 176, 184 (2019) (quoting *Granite Rock Co. v. Teamsters*, 561 U. S. 287, 299 (2010)). Before a dispute can be referred to arbitration, "the court determines whether a valid

12

arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (quoting 9 U.S.C. § 2).

A contract cannot bind or be enforced by a nonparty to the contract unless application of arbitration-neutral, state-law principles provide otherwise. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009); *Equal Emp't Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *AtriCure, Inc. v. Meng*, 12 F.4th 516, 524 (6th Cir. 2021); *Nationwide Mutual Insurance v. Home Ins. Co.*, 330 F.3d 843, 846-47 (6th Cir. 2003).

Such "traditional," arbitration-neutral state-law principles include "'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, forfeiture and estoppel[.]'" *Arthur Andersen*, 556 U.S. at 630-31 (quoting 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed.2001)). Agency is another. *AFSCME Council 25 v. County of Wayne*, 292 Mich. App. 68, 81 (2011).

There is no valid agreement to arbitrate between Ms. Kloosterman and any of the Individual Defendants. The only valid arbitration agreement is between Ms. Kloosterman and the Hospital, which is contained in the Employment Agreement. Nobody contends that any of the Individual Defendants signed or were otherwise made a party to the employment agreement, and the agreement bears that out. 2d.Am.Compl.ex.D, R.69-4, PageID.1305.

Because none of the Individual Defendants is a party to the Employment

Agreement, none can enforce it unless there is an arbitration-neutral basis

authorizing enforcement by nonsignatories. Whether or not there is a state law

basis authorizing nonparty enforcement is a fairly straightforward question in this

case, and the answer is an emphatic "no": Both state law and the FAA require

enforcement of Ms. Kloosterman's and the Hospital's agreement to *bar* third

parties —including the Individual Defendants—from enforcing the agreement.

Thus, this Court can, and should, reverse the district court's order compelling Ms.

Kloosterman to arbitrate with the Individual Defendants.

> C.   The Employment Agreement Expressly Bars The Individual
>      Defendants from Enforcing the Agreement, Including its Arbitration
>      Provision

The U.S. Supreme Court has explained that "the FAA imposes certain rules

of fundamental importance, including the basic precept that arbitration 'is a matter

of consent, not coercion,'" *Stolt-Nielsen,* 559 U.S. at 681(quoting *Volt Information*

*Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468,

479 (1989)), also known as arbitration's "first principle." (See Point II.A.) It  has

"held that parties are generally free to structure their arbitration agreements as they

see fit." *Stolt-Nielsen*, 559 U.S. at 683 (citations and quotations omitted). And as a

corollary, "parties may specify *with whom* they choose to arbitrate their disputes."

559 U.S. at 683-84 (quotations and citations omitted; emphasis in original).

14

Courts and arbitrators are required "to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties." 559 U.S. at 684 (citation omitted).

Here the parties made their intent to bar third parties from attempting to enforce the employment agreement crystal clear: They agreed that the employment agreement "shall be enforceable *only* by the parties hereto . . . and no other person shall have the right to enforce any of the provisions contained herein." 2d.Am.Compl.ex.D, R.69-4, PageID.1305.

Under the law of Michigan (and other jurisdictions), such clauses are enforceable to preclude third parties and other strangers to the contract from attempting to enforce it. *See Kammer Asphalt Paving Co. v. East China Township Schools*, 443 Mich. 176, 190 (1993); *Badiee v. Brighton Area Schools*, 265 Mich. App. 343, 369 (2005); *Dynamic v. Barton Malow*, 214 Mich. App. 425, 426, 430 (1995); *accord Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 150 F.3d 545, 548-49 (6th Cir. 1998) (New York law); *Long v. Mount Carmel Health Sys.*, 93 N.E.3d 436, 442-43, ¶¶ 14-18 (Ohio Ct. App. 2017) (Ohio law) (citing cases).

By the terms of employment agreement, which both the FAA and Michigan law requires this court to enforce, there is no basis in law or fact for the Individual

15

Defendants to enforce the arbitration agreement. The Court should reverse the district court's holding to the contrary.

> D.     The District Court Erred by Concluding that Agency Principles Permitted the Individual Defendants to Enforce the Arbitration Agreement

This is not a case where the district court or the Individual Defendants claim that the Individual Defendants were third-party beneficiaries to the contract and therefore had a right to enforce it, and there is no basis for such an argument. *See, e.g.*, Mich. Comp. Laws § 600.1405 (concerning third-party beneficiaries). Nor is it a case in which the district court or the Individual Defendants claim that Ms. Kloosterman is somehow estopped from denying the Individual Defendants the "right" to enforce a contract to which they are a stranger or that there is some other basis for enforcement based on "estoppel" or "intertwining." *See, generally, AtriCure*, 12 F.4th at 526-31 (discussing estoppel theories under Ohio law).

It is a case where the district court—relying on *Altobelli v. Hartmann*, 499 Mich. 284 (2016), a case that did not involve any nonsignatories to an agreement—concluded that agency principles effectively transformed an employment agreement between Ms. Kloosterman and the Hospital, including its arbitration provision, into an agreement to which the parties were: (a) Ms. Kloosterman;  (b) the Hospital; and (c) any of the Hospital's agents—i.e., officers, directors, and employees— who might be involved in a dispute between Ms. Kloosterman and the Hospital.

16

This conclusion expands the universe of persons that can enforce arbitration agreements far beyond what is contemplated by Michigan state law applicable to contracts generally. Based on the truism that entities, including corporations, may act only through their agents, the district court's opinion could be construed to empower any agent, officer, or employee of an entity to elect to demand arbitration under an arbitration agreement between the principal entity and its counter-signatory party, even if the dispute between the agent and the counter-signatory party was different from the dispute between the counter-signatory party and the entity signatory party. It would also raise the question whether the agents could also demand the counter-signatory party to arbitrate in circumstances where no claim was made against the entity signatory party or the entity signatory party elected not to arbitrate.

1.     *Altobelli* is Distinguishable and Inapplicable Here

*Altobelli* did not involve a claim by a nonparty agent to enforce a contract. It involved a claim by one of several parties—one of the law firm's principals, all of whom were parties to the law firm's Operating Agreement and each of whom was an agent of the law firm—and the law firm itself. The law firm (the "Firm") practiced as a professional limited liability company, which was formed by Michigan's Limited Liability Company Act, MCL 450.4101, et seq.

17

The law firm's internal affairs were governed by the Operating Agreement, which was signed by each of the firm's members, who were referred to as "principals." *Altobelli*, 499 Mich. at 288. The Operating Agreement was "'by and between the [Principals]. . . [and] evidence[d] the following agreement between them[.]. . . .'" 499 Mich. at 288.

The Operating Agreement contained an arbitration agreement, which in pertinent part provided:

> Any dispute, controversy or claim (hereinafter 'Dispute') between the Firm. . . and any current or former Principal or Principals of the Firm. . . of any kind or nature whatsoever. . . shall be solely and conclusively resolved according to [a dispute resolution procedure that included mandatory arbitration]. . . .

 A dispute arose over whether arbitration was required and the key issue the Court had to determine was "*who* the parties intended to include in the phrase, 'between the Firm. . . and . . . [a] former Principal." 499 Mich. at 296. The Court concluded that the term "Firm" in the arbitration agreement "was meant to include the individually named defendants[,]" who were also parties to the Operating Agreement. 499 Mich. at 296.

The *Altobelli* decision answered the question of what the term "The Firm" meant in the context of that agreement without expanding or contracting any of the rights of any of the parties to the Operating Agreement. But it has no relevance to the very different contract at issue here. While in *Altobelli* both the agents –i.e., the

members or principals—and the Firm were parties to the Operating Agreement, and bound by its arbitration agreement, the agents here, the Individual Defendants, are undisputedly *not* parties to the Employment Agreement.

But the district court extrapolated from *Altobelli* a purported legal rule that lacks any limiting principle. Relying on the *Altobelli*'s recognition that corporations must act through agents—a truism that is probably as old as corporate law itself—the district court ruled, for all intents and purposes, that the agents of a corporation—its officers, directors, and employees— can invoke— on their own behalf and for their own benefit— the provisions of any contract another person enters into with the corporation.

This pronouncement contravenes arbitration-neutral Michigan law concerning whether an agent for a disclosed principal is a "party" to the contract. The answer, which should not be much of a surprise, is "no." Quoting "principles of agency law summarized in 2 Restatement Agency, 2d, § 320, p. 67[,]" the Michigan Court of Appeals explained said that agents for disclosed principals do not become parties to the contract unless the parties agree that the agent is making a contract on his or her own account: "In the absence of other facts[,]" said the Court, "the inference is that the parties have agreed that the principal is, and the agent is not, a party. . . ." *Riddle v. Lacey Jones*, 135 Mich. App. 241, 246-47 (1984) (emphasis deleted in original); *see King v. Russell*, 278 Mich. 529, 533-34

19

(Mich. 1936); *Llewellyn-Jones v. Metro Property Group, LLC*, 22 F. Supp. 3d 760, 787 (E.D. Mich. 2014).

> 2.      Even if *Altobelli* Could be Legitimately Construed to Authorize the Individual Defendants to Invoke the Arbitration Agreement in Appropriate Circumstances, those Circumstances do not Exist Here

Assuming the Court were  to credit the district court's  conclusion that the Employment Agreement authorizes the Individual Defendants to enforce it as agents for a disclosed principal, then there is a limiting principle under Michigan law that bars the Individual Defendants from invoking the arbitration agreement here. *Altobelli* pointed out that the  "claims" the plaintiff there asserted in court were "substantially similar to" the ones the plaintiff originally asserted in the arbitration. *Altobelli*, 499 Mich. at 292. In addressing the separate question whether the claims fell within the scope of the arbitration agreement, the Court relied on its conclusion that "plaintiff's claims inextricably tie defendants' actions as agents to the alleged deprivation of plaintiff's rights under the Operating Agreement." *Altobelli*, 499 Mich. at 306.

Further, as Kloosterman argues in her opening brief, "Michigan law requires the nonsignatories to show either that the signatory's claims against them 'rely on the terms of the written agreement' or that 'the signatory raise[d] allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract.'" Appellant's.Brief, Dk. 36 at 44

20

(quoting *City of Detroit Police & Fires Ret. Sys. v. GSC CDO Fund Ltd.*, No. 289185, 2010 WL 1875758, at *6 (Mich. Ct. App. May 11, 2010) (quoting *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 398 (5th Cir. 2006))) (citation and quotation omitted). Satisfying this standard means Ms. Kloosterman's claims against the Individual Defendants must either be based on: (a) the Employment Agreement or (b) claims of interdependent and concerted misconduct by the Individual Defendants and a signatory to the contract, here the Hospital.

Ms. Kloosterman's claims against the Individual Defendants simply do not meet this standard. First, they are not based on the Employment Agreement. None of the claims that Ms. Kloosterman asserted against the Individual Defendants are based on the Employment Agreement or any of the rights and obligations created by it. They arise under the constitution of the United States, as implemented by Section 1983, or under Michigan's civil-rights statute. By contrast, the claims against the Hospital arise out of the Title VII disparate treatment arising out of the relationship created by the Employment Agreement.

Second, Ms. Kloosterman is not alleging substantially interdependent and concerted misconduct perpetrated by the Individual Defendants and the Hospital. The Hospital acknowledges that, under Michigan law, there is no interdependent and concerted misconduct unless "'all claims in [a] plaintiff's complaint against nonsignatories were also brought against' a signatory."  Appellant's.Brief, Dk. 36

21

at 45 (quoting *City of Detroit Police & Fires Ret. Sys.*, 2010 WL 1875758, at *7; other citation and quotation omitted).

The claims that Ms. Kloosterman brings against the Individual Defendants are not identical to the claim she brings against the Hospital. They are very different and are predicated on different causes of actions and legal theories. Ms. Kloosterman, for example, could conceivably, and all else equal, prevail on the merits of her claims against the Individual Defendants, but lose on the separate claims she makes against the Hospital.

That Ms. Kloosterman brings claims against the Individual Defendants not just in their official capacity, but also in their personal capacity further shows Ms. Kloosterman does not allege interdependent and concerted activity. Where, as here, Ms. Kloosterman has alleged tortious acts against the Individual Defendants that are separate and apart from the Hospital's, the Court is able to evaluate the activities of the Individual Defendants "without considering the actions of" the Hospital. *Tobel v. AXA Equitable Life Ins. Co.*, No. 2298129, 2012 WL 555801, at *11. And under those circumstances there is no basis for the Individual Defendants to attempt to invoke the agreement between the Hospital and Ms. Kloosterman. *See id.*

The Court should reverse the district court's order compelling Ms. Kloosterman to arbitrate against the Individual Defendants.

22

III.    EVEN IF THE FORFEITED ARBITRATION AGREEMENT COULD BE
ENFORCED, THE COURT WOULD BE REQUIRING MS. KLOOSTERMAN
TO ARBITRATE HER CONSTITUTIONAL, STATUTORY AND CIVIL RIGHTS
CLAIMS BEFORE THE AAA, AND AAA APPOINTED ARBITRATORS,
WHICH HAVE AN INSTITUTIONAL, PRO DIVERSITY, EQUITY AND
INCLUSION BIAS

   The heart of this case concerns Ms. Klosterman's conservative Christian

religious beliefs, which Defendant's DEI enforcers considered an anathema and

used as a basis for declaring her "evil" and terminating her. Plaintiff's conservative

and religious beliefs are protected by the First Amendment of the Constitution,

U.S. Const. Amend. 1, and federal and state civil and religious rights statutes.

Plaintiff is entitled effectively to vindicate her rights in a neutral and

fundamentally fair forum.  The D.C. Circuit has recognized that "[i]mpartiality of

the arbitrators is a cardinal feature of fair adjudication." *Republic of Arg. v. AWG

Grp.*, 894 F.3d 327, 333 (D.C. Cir. 2018). A "fundamentally fair hearing" requires

"that the decision makers are not infected with bias." *Howard Univ. v. Metro.

Campus Police Officer's Union*, 519 F. Supp. 2d 27 (D.D.C. 2007) (emphasis

supplied), *aff'd,* 512 F.3d 716 (D.C. Cir. 2008). The AAA's policies and arbitrator

selection process are institutionally biased against Christians and conservatives

who question the DEI dogma.

   "Institutional bias" is seldom precisely defined. However, it is best

understood to be where the administering organization appears to place its thumb

on the scales of justice to favor one set of parties or participants over another. It is

23

reasonable to expect that this is for the institution's economic, financial, political or business advantage. Where the bias is an aspect of the organization or a stated policy, it should be considered an institutional bias since the causes and effects of the favoritism are likely to broadly permeate the entire arbitral organization. Unlike Budwiser Brewing company's DEI blunders, which consumers and the public appropriately punished, Ms. Kloosterman seeks justice. It is impermissible for any entity purporting to provide justice—including the AAA—to favor any parties, whether for DEI or any other purpose.

The AAA's pro-DEI public positions were clearly stated when it recently added to its management team a Vice President of DEI. AAA President and CEO Bridget McCormack stated, "The creation of the vice president of diversity, equity and inclusion role is an important next step toward building a more inclusive and equitable ADR community. Intentional, focused leadership is necessary *to weave diversity and inclusivity into the fabric of our operations and culture.*" AAA® Establishes New Leadership Role, Appointing Ingeuneal C. Gray as Vice President of Diversity, Equity and Inclusion (AAA Press Release May 22, 2024) (https://www.adr.org/sites/default/files/document_repository/PR_DEI_VP.pdf (last

checked August 7, 2024))[3] (emphasis added). The AAA further verifies, "AAA has

the ability in its algorithms to provide arbitrator lists to parties that comprise at least

30% diverse panelists . . ." AAA Website, Arbitrators & Mediators, Roster Diversity,

Equity & Inclusion (https://www.adr.org/RosterDiversity) (last checked August 7,

2024). The AAA's website establishes, "As of the end of 2022 30% of active panel

members and *41% of new additions to the AAA-ICDR Roster are . . . diverse*."

(emphasis added) Putting Diversity into Practice (AAA 2023)

(https://www.adr.org/sites/default/files/document_repository/AAA182_AAA_ICDR

_Putting_Diversity_into_Practice.pdf) (last checked August 7, 2024))

    Those statements combined with "The AAA® is committed to the growth of

diversity, equity and inclusion within the alternative dispute resolution (ADR)

field[,]" *id*, prove that neither the AAA, nor AAA-appointed arbitrator panels are

neutral regarding DEI issues. Neither the AAA, nor AAA arbitrator panels will

provide a fundamentally fair forum for the effective vindication of the rights of

conservatives or Christians who assert they have been illegally terminated by DEI

officers for acting consistently with their religious beliefs.

---

[3] The Court may take judicial notice of the materials maintained by the AAA in its website, including the above-cited press release. *See Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of website); *Town of Davie Police Pension Plan v. Pier 1 Imps., Inc.*, 325 F. Supp. 3d 728, 746 n.3 (N.D. Tex. 2018).

Federal district courts have long considered arbitration challenges before the commencement of arbitration based on ordinary contract principles such as lack of consideration, unconscionability, and the adhesion contract doctrine.  In *Floss v Ryan's Family Steak Houses, Inc,* 211 F.3d 306, 314 (6th Cir 2000), the challenging employees had signed arbitration agreements. Attempting to avoid arbitration, the employees argued that the arbitration procedures were biased in their employer's favor. *See id* at 313-14.  The Sixth Circuit ultimately refused to compel arbitration on other grounds. Importantly, the court implied that if there had not been other grounds for its decision, it would have considered the potential bias prior to deciding whether to compel arbitration. See *id* at 314 Thus, it appears that the Sixth Circuit would consider certain institutional bias claims prior to arbitration.

There is no question here that the Hospital used an adhesive agreement to impose arbitration and specifically AAA arbitration, including mandatory use of the AAA's arbitrators upon Ms. Kloosterman. The Hospital mandated an AAA forum and process where Plaintiff was not aware of the AAA's inherent institutional bias.  When those factors are combined in an adhesion contract, it is obviously unconscionable, forming a 9 U.S.C. § 2 basis for this court to refuse enforcement of the agreement to arbitrate. The consideration of these factors is unrelated to what may happen in the arbitration, but focuses on whether there is a

26

valid, enforceable agreement to arbitrate separately from whether Defendants

waived or forfeited that agreement.

Furthermore, where underlying disputes involved federal statutory rights, federal

courts have considered challenges prior to arbitration when based on a party's inability to

effectively vindicate their statutory rights in an arbitration. These challenges are based on

the Supreme Court *Gilmer v Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) and

*Mitsubishi v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) A statutory rights

evaluation must be different, because there is a public policy interest in the proper

resolution of disputes over statutory rights. The public interest in the effective vindication

of statutory rights is separate and distinct from private parties' resolution of their disputes.

See *Cole v Burns International Security Services*, 105 F.3d 1465, 1476 (DC Cir 1997)

(citing and quoting Samuel Estreicher, Arbitration of Employment Disputes without

Unions, 66 Chi Kent L Rev 753, 777 (1990)) For these rights to be submitted to

arbitration, the arbitration must allow effective vindication of them. Any arbitration of a

statutory claim that did not allow for effective vindication of rights would conflict with

the statutes' purpose. *Id*.

Here the AAA does not conceal it is institutionally biased and strongly favors DEI

activities, such as those carried on by the Defendants-Appellants here. The AAA boasts

about its bias, which shows it is systemic, institutional bias.

We understand that Ms. Kloosterman has not raised the issue of institutional bias in this case yet, but if the Court should decide the judgment should be affirmed, it should consider what kind of an arbitration it would be compelling.

Ms. Kloosterman's First Amendment and federal civil and religious rights are so important that she should not be compelled to arbitrate, and certainly not to arbitrate in the biased forum of the AAA and its' DEI selected and appointed arbitrators. She is entitled to a fundamentally fair, neutral forum where she can effectively vindicate her rights. The AAA's own actions and statements proclaim it is so assertively "Pro-DEI" that it is objectively hostile to the beliefs and rights of conservatives and believing Christians. This court should deny arbitration, but if any arbitration is allowed, for Ms. Kloosterman's sake, it should not be arbitration before the Pro-DEI AAA or any DEI influenced AAA arbitrators.

## CONCLUSION

Amici curiae respectfully submit that the Court should reverse the judgment and remand for discovery in the district court.

Respectfully submitted,

/s/Philip J. Loree Jr.

RICHARD D. FAULKNER
12770 Coit Road, Suite 720
Dallas, TX 75251
(972) 427-1500
rfaulkner@faulkneradrlaw.com

PHILIP J. LOREE JR.
*Counsel of Record*
*For Arbitration Practitioners and*
*Scholars as Amici Curiae in Support of*
*Plaintiff-Appellant Valerie*
*Kloosterman*

CHARLES BENNETT
12770 Coit Road, Suite 720
Dallas, TX 75251
(972) 427-1500
cbennett@bennettlegal.com

THE LOREE LAW FIRM
11 Broadway, Suite 615
New York, NY 10004
(646) 253-0560/(516) 627-1720
(516) 941-6094 (M)
PJL1@LoreeLawFirm.com

*Counsel for Amici Curiae*

August 7, 2024

29

## CERTIFICATE OF COMPLIANCE

I, Philip J. Loree Jr., hereby certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,228 words, excluding the parts that Fed. R. App. P. 32(f) and 6th Circuit Rule 32(b) exempt from the word count.

2. This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 (Office) in 14-point Times New Roman font.

Dated: August 7, 2024

/s/ Philip J. Loree Jr.
Philip J. Loree Jr.

*Counsel of Record for*
*Arbitration Practitioners and*
*Scholars as Amici Curiae in*
*Support of Plaintiff-Appellant*
*Valerie Kloosterman*

30

## CERTIFICATE OF SERVICE

I certify that on August 7, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system, which will automatically send notification and a copy of the brief to the counsel of record for the parties.

Dated: August 7, 2024

/s/ Philip J. Loree Jr.
Philip J. Loree Jr.

*Counsel of Record for*
*Arbitration Practitioners and*
*Scholars as Amici Curiae in*
*Support of Plaintiff-Appellant*
*Valerie Kloosterman*

31