RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0239p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

―――――――――――

VALERIE KLOOSTERMAN,

*Plaintiff-Appellant*,

*v.*

METROPOLITAN HOSPITAL, dba University of
Michigan Health-West, dba Metro Health-University
of Michigan Health; RAKESH PAI, individually and in
his official capacity as President, Medical Group &
Chief Population Health Officer at University of
Michigan Health-West; RHAE-ANN BOOK,
individually and in her official capacity as Vice
President of Diversity, Equality, and Inclusion at
University of Michigan Health-West; MARIA COLE,
individually and in her official capacity as Director
of Human Resources at University of Michigan Health-
West; THOMAS PIERCE, individually and in his official
capacity as Diversity, Equity & Inclusion Coordinator
at University of Michigan Health-West; CATHERINE
SMITH, individually and in her official capacity as a
member of the Advanced Practice Providers' Council
at University of Michigan Health-West,

*Defendants-Appellees*.

> No. 24-1398

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:22-cv-00944—Jane M. Beckering, District Judge.

Argued: February 6, 2025

Decided and Filed: August 27, 2025

Before: MURPHY, DAVIS, and BLOOMEKATZ, Circuit Judges.

---

### COUNSEL

**ARGUED:**  Kevin Wynosky, CLEMENT & MURPHY, PLLC, Alexandria, Virginia, for Appellant.  Jonathon A. Rabin, HALL RENDER KILLIAN HEATH & LYMAN, P.C., Troy, Michigan, for Appellees.  **ON BRIEF:**  Kevin Wynosky, CLEMENT & MURPHY, PLLC, Alexandria, Virginia, Jeffrey C. Mateer, David J. Hacker, Doug Peterson, Roger L. Byron, FIRST LIBERTY INSTITUTE, Plano, Texas, Kayla A. Toney, FIRST LIBERTY INSTITUTE, Washington, D.C., for Appellant.  Jonathon A. Rabin, Larry R. Jensen, HALL RENDER KILLIAN HEATH & LYMAN, P.C., Troy, Michigan, for Appellees.  Ilya Shapiro, Tim Rosenberger, MANHATTAN INSTITUTE, New York, New York, Brian T. Goldman, HOLWELL SHUSTER & GOLDBERG LLP, New York, New York, Anthony J. Powell, OFFICE OF THE ATTORNEY GENERAL OF KANSAS, Topeka, Kansas, John Eidsmoe, FOUNDATION FOR MORAL LAW, Gallant, Alabama, Andrew Gould, HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK, PLLC, Phoenix, Arizona, John M. Reeves, REEVES LAW LLC, St. Louis, Missouri, Philip J. Loree Jr., THE LOREE LAW FIRM, New York, New York, for Amici Curiae.

MURPHY, J., delivered the opinion of the court in which DAVIS and BLOOMEKATZ, JJ., concurred.  MURPHY, J. (pp. 15–20), and BLOOMEKATZ, J. (pp. 21–24), also delivered separate concurring opinions.

---

### OPINION

---

MURPHY, Circuit Judge.  Valerie Kloosterman sued her former hospital employer and several of its officials under 42 U.S.C. § 1983, Title VII, and Michigan law.  The hospital defendants repeatedly asked the district court to dismiss all of Kloosterman's claims on the merits.  But the court declined to dismiss several of them.  Only at that point—after a year of litigation and after the defendants got a preview of how the merits might progress in court—did they seek to arbitrate.  We conclude that this request came too late, primarily because the defendants sought to avoid arbitration altogether by asking for a complete judicial victory.  Specifically, we hold that the defendants lost their right to arbitrate under the Federal Arbitration Act because their conduct put them "in default in proceeding with [their requested] arbitration."  9 U.S.C. § 3.  We thus reverse the district court's decision to dismiss this suit in favor of arbitration.

I

A

Given the early stage at which this case has reached us, we will summarize the facts using Kloosterman's operative complaint. We emphasize, though, that Kloosterman has yet to support her factual allegations with evidentiary support—as she must do at later stages of this case. *See Rudd v. City of Norton Shores*, 977 F.3d 503, 507 (6th Cir. 2020).

After her graduation in 2004, Kloosterman began her employment as a physician assistant with Metropolitan Hospital in Wyoming, Michigan. 2d Am. Compl., R.69, PageID 1236, 1241. She worked at an outpatient clinic that provided internal, family, and pediatric care about 15 minutes away from the main hospital building. *Id.*, PageID 1241. Over the years, the Hospital gave Kloosterman "exemplary performance reviews" and never put any discipline in her personnel file. *Id.*, PageID 1242. She also had a "stellar" reputation with patients, who knew her as a "caring provider." *Id.* She treated all patients the same regardless of their sexual orientation or gender identity. *Id.*

In 2016, Metropolitan Hospital became a subsidiary of the University of Michigan Health System. *Id.*, PageID 1241. It eventually began to do business under the name University of Michigan Health-West. *Id.*, PageID 1243. The University of Michigan Board of Regents obtained the power to control the Hospital's policies. *Id.*, PageID 1243–44. So the Hospital allegedly became a state actor. *Id.*

After the Hospital affiliated with the University of Michigan Health System, it required Kloosterman to take training "on serving LGBTQ+ patients." *Id.*, PageID 1244. In the middle of 2021, this training compelled her for the first time to "affirm statements concerning sexual orientation and gender identity that her Christian faith prohibited her from affirming." *Id.* Kloosterman's faith has led her to believe that God creates humans as either male or female and that individuals should not attempt to change their sex. *Id.*, PageID 1238–39. Her faith also bars her from referring to patients using pronouns that do not match their biological sex. *Id.*, PageID 1239. And it prevents her from helping patients obtain "sterilizing drugs" or undergo "surgical procedures" to alter their sex. *Id.* Even apart from her religion, Kloosterman also believes that

puberty-blocking drugs and sex-reassignment surgeries do not qualify as proper health care as a matter of her medical judgment. *Id.*, PageID 1240. Yet the training would have required her to affirm statements inconsistent with these opinions on threat of termination. *Id.*, PageID 1245.

To seek a religious accommodation, Kloosterman reached out to the office manager of her clinic, her supervising physician, and Catherine Smith, a nurse who served as a human-resources "liaison" for Kloosterman. *Id.*, PageID 1237, 1245–46. Smith and Kloosterman's supervising physician told Kloosterman "to do what she felt was right in her heart." *Id.*, PageID 1245. The office manager told her to speak with employees in the Hospital's Department of Diversity, Equity, and Inclusion (or DEI). *Id.* Kloosterman then contacted Dr. Rhae-Ann Booker, the vice president of this department. *Id.*, PageID 1245. Booker arranged for a meeting to discuss Kloosterman's accommodation request. *Id.*, PageID 1245–46.

On around July 29, 2021, Kloosterman met with Marla Cole, the HR Director; Thomas Pierce, the DEI Program Director; and Smith. *Id.* At this meeting, the participants asked whether Kloosterman "would use gender identity-based pronouns" and "be willing to refer patients for 'gender reassignment surgery.'" *Id.* Kloosterman explained that her religious faith and medical judgment barred her from engaging in these practices. But she added that she would use "patients' names in place of pronouns" so that she could "respect their wishes" in a way that comported with her beliefs. *Id.* This response angered Pierce, who repeatedly attacked Kloosterman's faith. *Id.* He told her that "she could not take the Bible or her religious beliefs to work with her . . . and that she was abusing her power as a health care provider to manipulate patients." *Id.* Pierce even referred to Kloosterman as "evil" for her refusal to give patients what they wanted. *Id.*, PageID 1247. And he called Kloosterman a "liar" when she suggested that she had treated gay and lesbian patients for years without any complaints. *Id.* He also opined that patients would commit suicide if Kloosterman refused to use their preferred pronouns. *Id.*

About a month after this heated exchange, Kloosterman noticed an unexpected meeting pop up on her calendar for August 24 with Cole and Smith. *Id.*, PageID 1248. At this meeting, Cole handed Kloosterman a termination letter from Rakesh Pai, the Hospital's president. *Id.*, PageID 1237, 1248. Smith explained to Kloosterman that the Hospital was firing her immediately because of her refusal to use preferred pronouns or to refer patients for gender-

reassignment surgeries.  *Id.*, PageID 1249.  The Hospital barred Kloosterman from returning to the clinic to get her things or even to say goodbye to her colleagues of many years.  *Id.*

B

In October 2022, Kloosterman sued the Hospital and the responsible administrators (Pai, Cole, Pierce, Booker, and Smith).  She alleged federal constitutional claims under 42 U.S.C. § 1983, federal statutory claims under Title VII, and state constitutional and statutory claims under Michigan law.

Over the next year, the parties engaged in substantial motions practice in the district court.  In January 2023, the Hospital and its administrators moved to dismiss all claims on the merits.  In response, Kloosterman filed a first amended complaint that mooted these initial motions.  Undeterred, the Hospital and administrators renewed their motions to dismiss and again sought to end the case.  They also moved to stay all discovery in the meantime.  The court granted this discovery stay.  In response to the two motions to dismiss, Kloosterman briefed the merits of her claims and sought leave to file a second amended complaint.

In September 2023, the district court issued a 43-page opinion granting the motion to dismiss in part and denying it in part.  The court first held that Kloosterman had adequately stated § 1983 claims against the hospital administrators under the First Amendment's Free Exercise Clause and the Fourteenth Amendment's Equal Protection Clause.  Yet the court also held that she had failed to state a § 1983 claim against these officials under the First Amendment's Free Speech Clause.  The court next found that Kloosterman had adequately stated discrimination and failure-to-accommodate claims against the Hospital under Title VII.  But it held that she failed to plausibly allege a disparate-impact claim under that law.  Lastly, the court dismissed all of Kloosterman's state-law claims under the Michigan Constitution but allowed her to amend her complaint to pursue claims against the hospital administrators under Michigan's Elliott-Larsen Civil Rights Act.

Soon after this decision, the parties started their discovery planning.  According to Kloosterman's counsel, they agreed on a joint status report to send to the court.  On October 19,

they also held their discovery conference under Federal Rule of Civil Procedure 26(f).  The court set a discovery conference for the next month.

Around the same time (and over a year after Kloosterman sued), the Hospital and its administrators raised an arbitration defense for the first time.  In their answer, they argued that the dispute was "subject to arbitration."  Answer, R.71, PageID 1352.  A short time later, they filed a "motion for summary judgment to compel arbitration."  Mot., R.73, PageID 1456.  As their support for this request, they pointed to an employment agreement that Kloosterman had entered with the Hospital before it had become part of the University of Michigan Health System.  This employment agreement included an arbitration clause.

The district court granted the motion to arbitrate.  The court found the arbitration clause enforceable and applicable to Kloosterman's current dispute.  It also held that the Hospital and its administrators had not waived this arbitration defense by their delay in asserting it.  The court thus compelled arbitration and dismissed the case.

## II

On appeal, Kloosterman raises several challenges to the district court's order compelling arbitration.  But we need only consider one of them: her argument that the Hospital and its administrators (whom we will collectively refer to as the "Hospital" from here on) gave up their right to arbitrate by litigating this dispute in court for a year before invoking that right.

### A.  What Conduct Extinguishes a Right to Arbitrate?

We begin with the rules governing how a party may raise an arbitration agreement in federal court.  Two sections of the Federal Arbitration Act establish special federal procedural rules for arbitration.  *See* 9 U.S.C. §§ 3–4.  The first section (§ 3) applies to a case already pending in federal court: it gives a defendant the right to seek a stay of this federal case in favor of arbitration.  *Id.* § 3.  The second section (§ 4) on its face applies when no federal case exists: it gives a plaintiff the right to "petition" a federal court for an order compelling the other side to arbitrate a dispute.  *Id.* § 4.  Yet courts have long allowed defendants in a pending federal case

not just to stay the case under § 3, but also to move to compel arbitration under § 4.  *See Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 836–37 (6th Cir. 2021).

As relevant now, § 3 suggests that a party cannot stay a case if the party is in "default" of seeking arbitration.  9 U.S.C. § 3.  Specifically, it provides that a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, *providing the applicant for the stay is not in default in proceeding with such arbitration*."  *Id.* (emphasis added).  The word "default" has a clear legal meaning.  *See Lackey v. Stinnie*, 145 S. Ct. 659, 666–67 (2025).  A party is in "default" of a duty or promise if the party omits or fails "to fulfill [the] duty" or "promise" through "neglect" or otherwise.  *Black's Law Dictionary* 342 (2d ed. 1910); *see also Webster's New International Dictionary of the English Language* 686 (2d ed. 1934).  That meaning fits this context.  If a defendant litigates in court for a long enough time before seeking arbitration, one would naturally say that the defendant has not lived up to the "promise" to arbitrate.  Such a defendant has thus committed a "default in proceeding with such arbitration" under that phrase's normal meaning.  9 U.S.C. § 3.  Indeed, in perhaps our earliest case finding that defendants had lost their right to arbitrate, we found them in default under § 3 because they litigated the case for seven years before seeking a stay.  *See Am. Locomotive Co. v. Chem. Rsch. Corp.*, 171 F.2d 115, 121 (6th Cir. 1948).

In the decades after *American Locomotive*, we have developed a two-part test to show that a defendant's choice to litigate in court barred the defendant from seeking to arbitrate.  First, the defendant's litigating conduct must have been "completely inconsistent with any reliance on an arbitration agreement[.]"  *Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 975 (6th Cir. 2020) (quoting *Hurley v. Deutsche Bank Tr. Co. Ams.*, 610 F.3d 334, 338 (6th Cir. 2010)).  Second, the defendant's conduct must have caused "actual prejudice" to the plaintiff.  *Id.* (citation omitted); *see United States ex rel. Dorsa v. Miraca Life Sciences, Inc.*, 33 F.4th 352, 357 (6th Cir. 2022); *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002).

Yet a recent Supreme Court decision has called our two-part test into doubt.  *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 417–19 (2022).  In *Morgan*, the plaintiff argued that the defendant waived an arbitration agreement by litigating in court for eight months before seeking

to arbitrate. *See id.* at 414–15. But the Eighth Circuit rejected this waiver claim because the defendant's delay had not prejudiced the plaintiff. *See id.* at 415. The Supreme Court assumed that the circuit courts had been correctly relying on "federal law" and using "the terminology of waiver" to resolve this timeliness question in the arbitration context. *Id.* at 416–17. Under those assumptions, the Court decided a narrow issue: Could this federal waiver law include a prejudice element? The Court answered "no." *See id.* at 417–19. It reasoned that waiver in other contexts does not require a prejudice showing and that the Federal Arbitration Act did not allow federal courts to create an arbitration-specific waiver test. *See id.*

Last year, we recognized that *Morgan* jettisoned the "prejudice" element of our two-part test. *See Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 974 (6th Cir. 2024). In *Schwebke*, though, we simply assumed that *Morgan* kept intact our test's first element—that a defendant took actions "completely inconsistent" with an intent to arbitrate—because the parties did not dispute that question. *Id.* at 974–75. The parties in *Schwebke* likewise did not dispute that waiver remained the correct label even though *Morgan* hinted that "a different procedural framework (such as forfeiture)" might apply. 596 U.S. at 419; *see Schwebke*, 96 F.4th at 974 n.1.

Unlike the plaintiff in *Schwebke*, Kloosterman here does suggest that forfeiture (rather than waiver) constitutes the correct label. Appellant's Br. 20 n.1. But like the court in *Schwebke*, we need not consider this labeling question to resolve this case. *See also In re Chrysler Pacific Fire Recall Prods. Liab. Litig.*, 143 F.4th 718, 722 n.1 (6th Cir. 2025).

B.  Did the Hospital's Actions Extinguish Its Right to Arbitrate?

How does this law apply here? At the outset, the Hospital's method of seeking arbitration has confused things. It filed what it styled a "motion for summary judgment to compel arbitration" rather than a motion under 9 U.S.C. § 3 or § 4. Mot., R.73, PageID 1456. But a summary-judgment motion is not the proper way to seek arbitration because it would end the case on the merits—not ship the case to arbitration. *See Perna v. Health One Credit Union*, 983 F.3d 258, 273–74 (6th Cir. 2020); 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2713, at 269 (4th ed. 2016). To be clear, if factual disputes exist over whether an

arbitration contract covers a claim, the summary-judgment standards may well apply.  *See Boykin*, 3 F.4th at 838.  But those standards do not turn a motion to arbitrate into a motion for summary judgment.

So should we interpret the Hospital's motion as filed under § 3 or § 4?  On the one hand, its motion sought relief in a pending suit—a fact that would point to § 3's stay procedures.  Indeed, the Supreme Court has held that § 3's use of the verb "shall" means that district courts must stay a case—and lack the power to dismiss it—if a party requests that stay relief.  *See Smith v. Spizzirri*, 601 U.S. 472, 475–78 (2024).  Nor could Kloosterman have appealed a stay (as compared to the dismissal of the suit).  *See id.* at 478.  On the other hand, neither the Hospital nor Kloosterman asked for a stay.  And the Hospital's briefing in favor of arbitration cited only § 4 and requested that the district court "dismiss the case."  Br., R.74, PageID 1462, 1468.  The court thus thought it had "discretion" on the proper remedy.  Order, R.79, PageID 1603.

Ultimately, we need not resolve this question because the same "default" analysis applies either way.  To be sure, only § 3 suggests that a court should deny a stay if the moving party is in "default"; § 4 contains no similar language for a request to compel arbitration.  But the Supreme Court has long held that the same procedural rules apply under both sections.  *See Boykin*, 3 F.4th at 837 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967)).  This case perhaps shows why.  We would render § 3's default limitation meaningless if a party in default could avoid that limit by moving to compel arbitration rather than to stay the case.  *Cf. Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 12–13 (1st Cir. 2005); *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1200–01 (9th Cir. 2003).  So in the first case in which we found defendants in "default" under § 3 for their delay in seeking to arbitrate, we relied on the same delay to hold that they could not compel arbitration under § 4.  *See Am. Locomotive Co. v. Gyro Process Co.*, 185 F.2d 316, 317, 320–21 (6th Cir. 1950); *cf. Am. Locomotive*, 171 F.2d at 121.

This conclusion brings us to the primary question presented: Did the Hospital's decision to litigate Kloosterman's case in court before seeking to resolve it in arbitration put the Hospital in "default" of proceeding with that arbitration?  We review this question de novo (while reviewing any underlying questions about the historical facts for clear error).  *See Schwebke*, 96 F.4th at 974.  And for several reasons we answer the question with a resounding "yes."

Most significantly, our cases treat a defendant's actions as "entirely inconsistent" with arbitration if the defendant first seeks "an immediate and total victory" in court through a motion to dismiss under Rule 12(b)(6) and then moves to arbitrate only after the court rejects this initial attempt to end the dispute. *Solo*, 947 F.3d at 975 (citation omitted). A party who seeks this type of judicial win on the merits is in "default" of an arbitration agreement because the party has failed to "observe"—indeed, has affirmatively disavowed—the "promise" to arbitrate the merits. *Black's Law Dictionary*, *supra*, at 342. After all, if the defendant wins this motion, it will forgo arbitration *altogether*. And defendants may not "play heads I win, tails you lose" by keeping arbitration in reserve just in case a court does not reject the entire case at the start. *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995); *see Solo*, 947 F.3d at 975.

Overwhelming circuit precedent supports this view. Courts often recognize the conflict between seeking a court victory and arbitrating the dispute. The Third Circuit, for example, held that a defendant lost the right to arbitrate when it sought to enforce that right only after the judicial decisions on its motions to dismiss made clear "that further litigation would be required" and that it could not win on the pleadings. *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 340 (3rd Cir. 2023). Likewise, the Seventh Circuit found that defendants lost the right to arbitrate because they sought arbitration only after losing a motion to dismiss in order "to erase" the plaintiff's "successes" in court. *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 501 (7th Cir. 2018). And the Eighth Circuit found that defendants lost the right to arbitrate by filing unsuccessful motions to dismiss and for summary judgment before attempting to enforce that right. *See Parker v. Kearney Sch. Dist.*, 130 F.4th 649, 654–55 (8th Cir. 2025); *see also Tech. in P'ship, Inc. v. Rudin*, 538 F. App'x 38, 39–40 (2d Cir. 2013) (order); *Degidio v. Crazy Horse Saloon & Rest. Inc.*, 880 F.3d 135, 141 (4th Cir. 2018); *Forby v. One Techs., L.P.*, 909 F.3d 780, 784 (5th Cir. 2018); *Martin v. Yasuda*, 829 F.3d 1118, 1125–26 (9th Cir. 2016); *Khan v. Parsons Global Servs., Ltd.*, 521 F.3d 421, 427 (D.C. Cir. 2008).

The same reasoning dooms the Hospital's efforts to arbitrate this dispute. Before the Hospital gave the slightest hint that it might invoke arbitration, it twice sought "an immediate and total victory" by asking the *district court*—not an *arbitrator*—to reject Kloosterman's case

on the merits. *Solo*, 947 F.3d at 975 (citation omitted). The Hospital first requested that the court dismiss all claims in Kloosterman's complaint "with prejudice" to her refiling them anywhere (including in arbitration). Mot., 14, PageID 198; *see* Mot., R.16, PageID 234. It then renewed this request for a "with prejudice" dismissal after Kloosterman filed her first amended complaint. Mot., R.34, PageID 637–38; *see* Mot., R.36, PageID 683–84. And it opposed Kloosterman's efforts to file a second amended complaint on the ground that the filing would be "futile" because the additional allegations could not survive a motion to dismiss. Resp., R.56, PageID 1017–18. Yet the district court partially rejected the Hospital's motion to dismiss, reasoning that Kloosterman had stated viable claims under the First Amendment, Title VII, and Michigan law. Only at this point—after the Hospital got a sneak peak of how the case would proceed if it remained in court—did it shift to wanting to take its chances with arbitrators. *See Solo*, 947 F.3d at 975. By then, though, the Hospital had already broken its "promise" to arbitrate the dispute because it had sought a judicial decision on the merits instead. *Black's Law Dictionary*, *supra*, at 342. It thus was in "default" of the parties' arbitration agreement and so lost its right to seek arbitration under the Federal Arbitration Act. 9 U.S.C. § 3.

To be sure, the question whether a party has acted inconsistently with the right to arbitrate turns "on the totality of the circumstances" rather than on a "bright-line rule" that might cut across factually different cases. *Schwebke*, 96 F.4th at 976 (citing *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 719 (6th Cir. 2012)). Yet our precedent has made this case-by-case point to clarify that defendants can relinquish the right to arbitrate even if (unlike in this case) they never file a "dispositive motion" that "affirmatively" seeks a decision on the merits from the court. *Id.* Our case-by-case reasoning thus has recognized the importance of that affirmative request to the question whether the defendant lost the right to arbitrate. Besides, the Hospital points to no other case-specific conduct that would suggest it preserved its right to arbitrate. Its other behavior—such as engaging in discovery discussions with Kloosterman's counsel and choosing a discovery plan—further bolsters our conclusion that it was in "default" of arbitration, 9 U.S.C. § 3, because it acted in a way that was "completely inconsistent" with seeking such a forum. *Germany v. River Terminal Ry. Co.*, 477 F.2d 546, 547 (6th Cir. 1973).

The Hospital's responses do not change things.  It suggests that the Michigan Uniform Arbitration Act—not the Federal Arbitration Act—applies because the contract incorporated Michigan law.  It adds that this state arbitration law contains no analogous "default" limitation on arbitration.  Yet even if Michigan's "substantive law" of contracts would apply to interpretive questions about the contract (including substantive waiver questions), that conclusion does not mean that Michigan's "procedural law"—found in its state arbitration statute—also applies in federal court.  *Gasperini v. Ctr. For Humans., Inc.*, 518 U.S. 415, 427 (1996).  In other words, both state waiver law and the Federal Arbitration Act may provide separate and independent grounds to find that a party gave up its right to arbitrate.  State law governs the substantive waiver question (that is, whether the party waived its right to arbitrate as a contractual matter), while the Federal Arbitration Act governs the extent to which the party may enforce its arbitration right in federal court (that is, whether the party seeking a stay in favor of arbitration is "in default in proceeding with such arbitration," 9 U.S.C. § 3).  Indeed, the Hospital's argument that the Federal Arbitration Act's procedures do not apply is analogous to the suggestion that the district court should have applied Michigan's rules of civil procedure rather than the Federal Rules of Civil Procedure.  That claim would have conflicted with black-letter law.  *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 559 U.S. 393, 398–99 (2010) (plurality opinion).  So the Hospital did not even try to rely on Michigan's arbitration act in the district court.  To the contrary, its briefing there sought arbitration under "Section 4 of the Federal Arbitration Act"— not under any provision of Michigan law.  Br., R.74, PageID 1462.  It was right the first time.

The Hospital next suggests that it did not *waive* the right to arbitrate because Kloosterman failed to prove that it "*intentionally*" gave up that right.  Appellee's Br. 13 n.5.  But our caselaw in this arbitration context permits a party to lose the right to arbitrate through a "mistake" if the party has "imputed knowledge" of the agreement—whether or not the party knows of it.  *Schwebke*, 96 F.4th at 976.  And the Hospital cannot seriously contend that it lacked knowledge of the agreement that it drafted.  *See id.*; *see also Chrysler*, 143 F.4th at 724.

The Hospital also argues that the Supreme Court in *Morgan* not only invalidated the second element of our two-part test (which required prejudice) but also changed the first element (which required a party to act inconsistently with arbitration).  Yet the Hospital does not try to

propose any alternative test. And our existing cases reasonably implement the statutory provision barring arbitration if a party is in "default" of invoking it. 9 U.S.C. § 3.

The Hospital lastly cites several cases that refused to find a defendant in default of arbitration merely because it filed a motion to dismiss. But none of these cases has facts like this one—in which defendants moved to dismiss *all* claims on their *merits* while knowing that the claims were subject to arbitration. Consider *Rush v. Oppenheimer & Co.*, 779 F.2d 885 (2d Cir. 1985). The complaint in that case included both arbitrable and non-arbitrable claims. *See id.* at 886, 888. In this case, by contrast, the Hospital argued that "all claims are subject to arbitration[.]" Mot., R.73, PageID 1457. So unlike the plaintiff in *Rush*, Kloosterman did not file a complaint with a confusing mix of arbitrable and non-arbitrable claims. *Rush*, 779 F.2d at 888 (citing *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 463 (2d Cir. 1985)). And, as we explained in *Solo*, a party does not necessarily lose the right to arbitrate one claim merely by moving to dismiss a different claim. *See* 947 F.3d at 975 (citing *Sweater Bee*, 754 F.2d at 463).

Or consider *ABF Freight System, Inc. v. International Brotherhood of Teamsters*, 728 F.3d 853 (8th Cir. 2013). The defendants in that case asked for a without-prejudice dismissal for lack of jurisdiction on *standing* grounds before seeking to arbitrate. *Id.* at 857–58, 863–65. In this case, by contrast, the Hospital sought a with-prejudice dismissal on the *merits*. As we also explained in *Solo*, defendants do not necessarily engage in conduct inconsistent with arbitration if they seek to dismiss a suit from a court on the ground that the court lacks jurisdiction to decide the merits. *See* 947 F.3d at 975. Unlike a motion to dismiss on the merits, this type of motion does not choose a court over an arbitrator "for a decision that resolves the dispute." *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 995 (7th Cir. 2011).

Finally consider *Williams v. Cigna Financial Advisors, Inc.*, 56 F.3d 656 (5th Cir. 1995). There, the defendant claimed that it did not learn of the arbitration agreement until after it had moved to dismiss the complaint. *See id.* at 658, 661. Yet our cases have already rejected the claim that a bare "mistake" alone can suffice to save an untimely request to arbitrate. *Schwebke*, 96 F.4th at 977. Regardless, the Hospital here makes no claim that it did not know of the

arbitration agreement while litigating its motion to dismiss.  So we need not consider when (if ever) a party's lack of knowledge might excuse a "default" in seeking to arbitrate.  9 U.S.C. § 3.

In sum, we hold that the Hospital lost its right to arbitrate this dispute under the Federal Arbitration Act by seeking to dismiss all of Kloosterman's claims on the merits.  We thus reverse and remand for proceedings consistent with this opinion.

---

**CONCURRENCE**

---

MURPHY, Circuit Judge, concurring.  Defendants who agree to arbitrate their disputes sometimes litigate them in federal court for a substantial period before they request arbitration. What standards should guide whether these defendants have lost their right to arbitrate through this litigation conduct?  Should we consider the conduct under "waiver" or "forfeiture" rules? Should we rely on federal law (because this issue arises in federal court) or state law (because state contract law typically governs the enforceability of arbitration agreements)?  Our court has held that a party loses the right to arbitrate if it takes actions that are "completely inconsistent" with the right.  *Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 974–75 (6th Cir. 2024).

Two unexamined assumptions have undergirded this traditional test.  To start, we have described the test as raising a waiver—not a forfeiture—question.  *See Solo v. United Parcel Serv. Co.*, 947 F.3d 968, 975 (6th Cir. 2020); *Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012); *Gen. Star Nat'l Ins. Co. v. Administratia de Stat*, 289 F.3d 434, 438 (6th Cir. 2002); *Germany v. River Terminal Ry. Co.*, 477 F.2d 546, 547 (6th Cir. 1973) (per curiam).  But we have yet to identify why we have picked the "waiver" label.  Next, we have followed federal law—not state law—to decide whether a defendant engaged in a waiver. Admittedly, none of our cases expressly addresses whether this "waiver" issue raises a federal-law question (because the parties have litigated it in federal court) or a state-law question (because the issue involves state contract law).  But we have almost always looked only to federal precedent as guidance.  *See, e.g., Borror Prop. Mgmt., LLC v. Oro Karric N., LLC*, 979 F.3d 491, 494–95 (6th Cir. 2020); *Johnson Assocs.*, 680 F.3d at 717–18; *but cf. WorldSource Coil Coating, Inc. v. McGraw Constr. Co.*, 946 F.2d 473, 476–77 & n.3 (6th Cir. 1991).  And we have applied the test no matter the state contract law at issue.  *Compare Solo*, 947 F.3d at 972 n.2, 975 (Michigan law), *with Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, 310 F. App'x 858, 859–60 (6th Cir. 2019) (Tennessee, Connecticut, or Delaware law).

The parties' briefing in this case has referred to these assumptions in passing.  We need not explore them to resolve this case.  So I write a separate concurrence to propose one way to

reconcile our precedent with broader waiver and forfeiture principles. In short, a party might be able to both waive and forfeit the right to arbitrate. That is, parties might *waive* a substantive right to compel arbitration under *state contract* law, and they might *forfeit* that right under *federal procedural* rules. Here, then, the Metropolitan Hospital and its administrators (collectively, the "Hospital") likely forfeited that right under a special federal forfeiture rule in the Federal Arbitration Act. They may also have waived that right under Michigan contract law. And ultimately, our current test may be best understood as applying a federal (not state) forfeiture (not waiver) rule.

1. General Differences Between Waiver and Forfeiture

Courts usually distinguish a "waiver" from a "forfeiture" on two fronts. As an initial matter, the doctrines typically have different state-of-mind elements. *See Walker v. United States*, 134 F.4th 437, 444 (6th Cir. 2025); *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011–12 (6th Cir. 2022). Courts regularly describe a "waiver" as an "*intentional* relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) (emphasis added). In contrast, courts regularly describe a forfeiture as a "failure to make the timely assertion of a right"—even if through a negligent *mistake*. *Olano*, 507 U.S. at 733; *see Bannister*, 49 F.4th at 1011–12. Next, the doctrines typically have different remedies. *See Walker*, 134 F.4th at 440. If a party waives a claim, courts generally refuse to consider it at all. *See Bannister*, 49 F.4th at 1011. Yet if a party forfeits a claim, courts still might consider it in "exceptional" circumstances. *Id.* at 1012 (citation omitted).

Ultimately, though, these differences flow out of the different sources of law that support the two doctrines. Waiver depends on the *substantive* law that creates the right at issue. Forfeiture depends on the *procedural* rules of the court in which the party seeks to assert the right.

Start with waiver. "What suffices for waiver depends on the nature of the right at issue." *New York v. Hill*, 528 U.S. 110, 114 (2000). The Supreme Court most often considers what a party must do to waive federal *constitutional* rights. It has read the Constitution to prohibit a

waiver unless a party has made a knowing and intentional choice to give up a right. *See Brewer v. Williams*, 430 U.S. 387, 404 (1977). But rights can have sources other than the Constitution. As one example, courts also must consider when a party may waive a federal *statutory* right. There, the Supreme Court has explained that the requirements for (and validity of) a waiver depend on "the provision creating the right"—again, looking to the right's source. *Hill*, 528 U.S. at 116; *see Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427 (1998); *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). So waiver in the statutory context raises a normal question of statutory interpretation. As another example, courts must consider when a party may waive a *contractual* right. In that context, the requirements for a waiver depend on the state contract law that governs the contract. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). And according to a well-known treatise, the substantive law of contracts typically allows express or implied waivers. *See* 13 Williston on Contracts § 39:27 (4th ed.), Westlaw (database updated May 2024).

Turn to forfeiture. What suffices for forfeiture depends on a court's "procedural" rules for how to assert a right—not on the substantive law creating the right. *Olano*, 507 U.S. at 731 (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)). What are these rules in federal courts? The Rules Enabling Act gives the Supreme Court "the power to prescribe general rules of practice and procedure" in those courts. 28 U.S.C. § 2072(a); *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406–07 (2010) (plurality opinion). Acting under this power, the Court has adopted the Federal Rules of Civil and Criminal Procedure. And the forfeiture doctrine bars a party from relying on "any" right—whether constitutional, statutory, or contractual—if the party does not "make timely assertion of the right" under these rules. *Olano*, 507 U.S. at 731 (quoting *Yakus*, 321 U.S. at 444). To give a well-known example, federal courts routinely enforce the forfeiture rule barring a party from asserting an issue for the first time on appeal if the party did not raise the issue in the district court. *See Bannister*, 49 F.4th at 1011; *see also Olano*, 507 U.S. at 731 (citing Fed. R. Crim. P. 52(b)). Notably, moreover, federal courts continue to apply these federal procedural (and forfeiture) rules even when they consider a state-law right. *See Shady Grove*, 559 U.S. at 398–99. That is because federal courts adjudicating state-law disputes have followed "state substantive law and federal procedural law"

ever since *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

 2. Waiver v. Forfeiture in the Arbitration Context

How does this dichotomy between waiver and forfeiture line up with our (evolving) test to decide whether a defendant relinquished a right to arbitrate by litigating a case in court before requesting arbitration? According to the Hospital and its administrators, the dichotomy shows that state—not federal—law governs this waiver issue. According to Kloosterman, the dichotomy shows that our cases have been applying a forfeiture rule (not a waiver rule) in all but name. They are both likely right. Both state waiver law and federal forfeiture rules can provide distinct grounds to find that a party gave up a right to arbitrate. And our current test is best read as applying a federal forfeiture rule.

*State Waiver Law*. For starters, the Hospital and its administrators argue that our test wrongly assumes that federal law dictates whether a defendant has "waived" arbitration. They have a point. This waiver question likely should rest on state law because "waiver depends on the nature of the right at issue." *Hill*, 528 U.S. at 114. And this case does not concern a federal constitutional or statutory right; it concerns a right to arbitrate created by a contract between Kloosterman and the Hospital. Contracts are creatures of state law. *See Arthur Andersen*, 556 U.S. at 630–31. So presumably the specific state law governing a contract should dictate what a party must do to waive an arbitration right—just as that law would dictate what a party must do to waive any other contractual right. Indeed, the Federal Arbitration Act instructs courts to treat arbitration contracts equal to—not better than—other contracts. *See id.*; *see also Morgan*, 596 U.S. at 418. And state law typically allows courts to find "implied" waivers based on a party's conduct if the conduct "clearly manifested an intention to" forgo the right ("true" or "pure" waiver) or "reasonably induced the nonwaiving party to rely on an apparent waiver of the term or provision to its detriment" ("waiver by estoppel"). Williston on Contracts, *supra*, § 39:27. Ultimately, though, waiver in this case would rest on Michigan law because the parties incorporated that law into their contract. *See Quality Prods. and Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 256–59 (Mich. 2003); Contract, R.74-1, PageID 1476.

This waiver question thus may be heading down the same road as the question whether a nonparty to a contract may enforce an arbitration clause.  At one time, federal courts relied on the Federal Arbitration Act's presumption in favor of arbitration to allow nonparties to broadly enforce arbitration clauses, thereby treating this question as one of federal law.  *See AtriCure, Inc. v. Meng*, 12 F.4th 516, 523–24 (6th Cir. 2021).  But the Supreme Court rejected that view in *Arthur Andersen*.  *See* 556 U.S. at 630–31.  The Court reasoned that the Act did not "alter background principles of state contract law" and that those principles regulated who could enforce arbitration contracts.  *Id.*  So circuit courts now look to state law to decide who may enforce an arbitration clause.  *See AtriCure*, 12 F.4th at 524.  *Morgan* likewise recognized that federal courts may not use any federal presumption in favor of arbitration to impose a prejudice element in the waiver context.  596 U.S. at 418–20.  Instead, courts must treat "arbitration contracts like all others" and refuse to enforce those contracts on the same terms.  *Id.* at 418.  And since Michigan law would set the standards to determine whether a party waived other contractual terms, that law likely should set the standards to decide whether the Hospital waived its right to arbitrate.

*Federal Forfeiture Rules*.  That said, Kloosterman is also likely correct that we should rename our current test forfeiture rather than waiver.  For one thing, our cases better fit forfeiture because they apply *federal* standards to decide whether a party lost the right to arbitrate.  Yet waiver typically depends on the right's source—here, *state* contract law.  For another, waiver typically requires a party to *intentionally* abandon a known right.  *See id.* at 417.  But we have found that a defendant lost the right to arbitrate when the defendant acted in a way that was "completely inconsistent with" arbitration—without asking whether the defendant *intentionally* gave up the right.  *Solo*, 947 F.3d at 975 (citation omitted).  Indeed, we have barred arbitration even when a defendant made a "mistake" by failing to timely invoke the right.  *Schwebke*, 96 F.4th at 976–77; *see also In re Chrysler Pacific Fire Recall Prods. Liab. Litig.*, 143 F.4th 718, 724 (6th Cir. 2025).  So our test bears all the hallmarks of forfeiture.

Other circuit courts have begun to recognize this point.  Take the D.C. Circuit.  For years, it said that parties "waive" the right to arbitrate by failing to timely enforce that right in the district court.  *See Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 922 (D.C. Cir. 2011).

"[T]o be technically correct," however, that court clarified that its cases had been applying a federal forfeiture rule unmoored from a party's intent to give up a right. *Id.*; *see also Field Intel. Inc v. Xylem Dewatering Sols. Inc.*, 49 F.4th 351, 359 n.2 (3d Cir. 2022); *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 498–99 (7th Cir. 2018); *Rankin v. Allstate Ins. Co.*, 336 F.3d 8, 12 (1st Cir. 2003).

That conclusion leads to the next question: what is the *source* of our federal test? Most of our cases do not expressly identify any source. *See, e.g.*, *Schwebke*, 96 F.4th at 974; *Solo*, 947 F.3d at 975; *Gen. Star Nat'l Ins. Co*, 289 F.3d at 438; *Germany*, 477 F.2d at 547. Have we been developing a claims-processing rule as a matter of federal common law? No, as the majority opinion explains, our precedent is likely best read as interpreting and applying the Federal Arbitration Act's procedural provisions. *See Am. Locomotive Co. v. Chem. Rsch. Corp.*, 171 F.2d 115, 121 (6th Cir. 1948). Section 3 of that Act makes clear that a court must "stay" a case in favor of arbitration, "providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. And the Court has held that the same procedural rules apply under § 4 when a party moves to compel arbitration. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). Going forward, then, perhaps we should develop our federal test in a way that best comports with the meaning of the word "default." We have taken a step in that direction here by finding that the Hospital lost its ability to arbitrate.

———————————

# CONCURRENCE

———————————

BLOOMEKATZ, Circuit Judge, concurring.    "The difference between waiver and forfeiture has long bedeviled lawyers and judges alike."    *United States v. Montgomery*, 998 F.3d 693, 696 (6th Cir. 2021).    Judge Murphy's concurrence seeks to alleviate this confusion by proposing a unifying theory distinguishing waiver and forfeiture.    The concurrence posits that waiver—the intentional relinquishment of a known right—finds its source in the "*substantive law that creates the right at issue*."    Concurring Op. at 3.    And forfeiture—the failure to timely assert a right—depends on the "*procedural rules of the court in which the party seeks to assert the right*."    *Id.*    Although I admire the concurrence's attempt to clean up this muddy area of law, I write separately to explain that, in my view, the distinction between waiver and forfeiture is not always so simple.

Start with the concurrence's theory that waiver turns on substantive law.    True, what constitutes waiver *can* "depend[] on the nature of the right at issue."    *New York v. Hill*, 528 U.S. 110, 114 (2000); *see* Concurring Op. at 3.    But it doesn't always.    Indeed, our case law is replete with examples of types of "waiver" that seemingly do not flow out of substantive law.    For example, parties can both "forfeit" and "waive" arguments.    When a party neglects to make an argument in a timely manner, that's forfeiture.    *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022).    But if a party goes further and indicates its awareness of an argument and intention to abandon it, the party has "waived" the argument—not merely forfeited it—and we accordingly will not review it.    *See United States v. Walker*, 615 F.3d 728, 733 (6th Cir. 2010); *United States v. Scales*, No. 24-5905, 2025 WL 2042202, at *4–5 (6th Cir. July 21, 2025).    I question whether "waiver" in this context turns on substantive law—or, for that matter, what the substantive right defining what constitutes waiver would even be.[1]    Rather, it seems to

———————————

[1] That it can be hard to identify the source of the substantive law governing the right to be waived itself illustrates other risks attendant to the concurrence's theory.    What is the source of the substantive law governing what is sufficient to "waive" an argument?    Is it that parties have some sort of constitutional right to raise any arguments available to them on appeal?    Such an approach would risk constitutionalizing large swaths of waiver law, an outcome that could have profound legal and practical implications.    *See, e.g.*, *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015) ("[O]nce a case or controversy properly comes before a court, judges are bound

me that in this context, we simply look at the party's conduct and examine whether it is sufficient for waiver or is only forfeiture. *Cf. Freytag v. Comm'r*, 501 U.S. 868, 894 n.2 (1991) (Scalia, J., concurring) ("Waiver . . . is merely one means by which a forfeiture may occur."); *United States v. Brito*, 979 F.3d 185, 189 (3d Cir. 2020) ("To be a waiver, the failure to assert a right must be *intentional*, and the right relinquished must be *known*. Anything less is mere forfeiture."). And we do so without looking to substantive law.

Or consider federal procedural rules limiting how claims may proceed, the violation of which sometimes constitutes waiver, not forfeiture. Federal Rule of Civil Procedure 23(f), for example, provides a time limitation for appealing orders granting or denying class-action certification. *See* Fed. R. Civ. P. 23(f). The Supreme Court has explained that because this "time limitation is found in a procedural rule, not a statute, it is properly classified as a nonjurisdictional claim-processing rule"—and "therefore can be waived or forfeited by an opposing party." *Nutraceutical Corp. v. Lambert*, 586 U.S. 188, 192 (2019). If waiver derives only from substantive law, however, what substantive law would control in the Rule 23(f) context?

And there are also places where what constitutes waiver is controlled by both substantive *and* procedural law. Personal jurisdiction is an example. Because "the requirement of personal jurisdiction flows from the Due Process Clause," there must be "sufficient minimum contacts between [a] nonresident defendant and the forum state" for a court to exercise personal jurisdiction. *Gerber v. Riordan*, 649 F.3d 514, 518 (6th Cir. 2011) (citation omitted). This minimum-contacts test may be met by a defendant submitting themselves to the court. In such an instance, the requirements of the Due Process Clause are satisfied, and the defendant has "waive[d] his potential personal jurisdiction defense." *Id.* So waiver of personal jurisdiction has its roots in substantive law. But waiver of personal jurisdiction is also controlled by federal procedural law: Federal Rule of Civil Procedure 12(h) provides that a defendant may waive— not forfeit—a lack of personal jurisdiction by failing to move to dismiss or include the issue in a responsive pleading. *See* Fed. R. Civ. P. 12(h)(1); *see also* Fed. R. Civ. P. 12(b)(2). The upshot

---

by federal law."); *Mathews v. Eldridge*, 424 U.S. 319, 347 (1976) ("We only need say that experience with the constitutionalizing of government procedures suggests that the ultimate additional cost in terms of money and administrative burden would not be insubstantial.").

is that, although waiver is often determined by reference to substantive law, that is not always the case.

Nor does the concurrence's corollary proposition that forfeiture turns on a court's procedural rules always hold true. To the contrary, there are substantive rights that courts have held cannot be forfeited, notwithstanding a court's ordinary rules of procedure. For example, states do not waive or forfeit *Younger* abstention by failing to raise the issue. *See, e.g.*, *Fed. Express Corp. v. Tenn. Pub. Serv. Comm'n*, 925 F.2d 962, 967 (6th Cir. 1991) (noting that the state did not waive its *Younger* abstention argument even though it did not raise the issue in its pleadings and only argued for abstention after the district court raised it sua sponte); *Boardman v. Estelle*, 957 F.2d 1523, 1535 (9th Cir. 1992) ("A state may waive *Younger* only by express statement, not through failure to raise the issue."). The typical procedural rules governing federal litigation—which, as discussed, treat the failure to raise an argument as forfeiture—simply do not apply where *Younger* abstention is concerned. Maybe this suggests that the substantive law governing what constitutes waiver can essentially overcome federal procedural law in some circumstances. But that nonetheless means that there is a category of doctrines over which waiver and forfeiture overlap.

All told, while I appreciate the concurrence's attempt to provide a unifying theory of waiver and forfeiture law, I fear that both waiver and forfeiture defy easy categorization. Ultimately, what constitutes waiver or forfeiture is context dependent and depends on a variety of factors—both substantive and procedural. Indeed, some categories of conduct might not fall neatly along waiver-forfeiture lines. This case is perhaps a good example. Section 3 of the Federal Arbitration Act speaks in terms of "default," not of waiver or forfeiture. 9 U.S.C. § 3. We have reasoned that a party has defaulted on its arbitration rights when it "takes actions that are completely inconsistent with any reliance on [its] arbitration agreement." *In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 143 F.4th 718, 723–24 (6th Cir. 2025) (alteration in original) (quoting *Solo v. UPS Co.*, 947 F.3d 968, 975 (6th Cir. 2020)). In some cases, we have stated that we are applying "ordinary waiver rules" when asking if a party defaulted on its arbitration rights. *Schwebke v. United Wholesale Mortg. LLC*, 96 F.4th 971, 974 (6th Cir. 2024). But as the concurrence explains, we conduct this inquiry "without asking" whether the defendant

in fact "*intentionally* gave up" its arbitration right, as we would if we were applying traditional rules of waiver. Concurrence at 6. Yet we have never interpreted the FAA as allowing us to exercise discretion to resurrect a party's arbitration right once the party is in default, as we could if we were applying traditional rules of forfeiture. *See Bannister*, 49 F.4th at 1012 (explaining that a forfeited claim may be considered in "exceptional" circumstances). That we have not interpreted the FAA as permitting us to exercise discretion to enforce an abandoned arbitration right makes sense: Section 3 of the FAA provides no language tending to suggest that we have such discretion.

For these reasons, I join the majority opinion, which relies on the term "default" under the FAA to resolve this case. I would leave the difficult task of harmonizing waiver and forfeiture jurisprudence across myriad contexts for another day.